[L. A. No. 4449.   In Bank.—June 4, 1917.]

## THEO. A. WINBIGLER, as Special Administrator of the Estate of Karl Wenzel, Deceased, Respondent, v. W. H. A. SHERMAN, Appellant.

DEED OF TRUST—SALE BY TRUSTEE—JUDGMENT VACATING SALE—MOTION FOR DIFFERENT JUDGMENT ON FINDINGS.—In an action to vacate a trustee's sale of land under a deed of trust, in which the court found that the sale was not in compliance with the terms of the trust deed for failure to publish notice of sale as therein required, the conclusions of law and judgment vacating the sale cannot be set aside on motion, under sections 663 and 663a of the Code of Civil Procedure, and a different judgment entered, where neither the pleading nor findings of fact show the provisions of the trust deed relative to notice of sale.

ID.—PUBLICATION OF NOTICE OF SALE—PERIOD OF PUBLICATION.—A provision in a trust deed that notice of sale shall be published "at least twice a week for four successive weeks" does not require the publication to be made for the four weeks next preceding the date of the sale.

ID.—REASONABLE INTERVAL BETWEEN PUBLICATION AND SALE.—The allowance of an interval of fifteen days between the last publication of the notice of sale and the date of the sale is not unreasonable.

ID.—INADEQUACY OF PRICE—SETTING ASIDE SALE.—Mere inadequacy of price is not a sufficient ground for refusing to give full effect to a trustee's sale under a deed of trust; but where the inadequacy is palpable and great, very slight additional evidence of unfairness or irregularity is sufficient to authorize setting aside the sale.

ID.—OPPRESSION AND UNFAIRNESS — IRREGULARITY IN PROCEEDINGS FOR SALE.—Under the circumstances of this case, the refusal of the creditor to consent to a postponement of the sale and of the trustee to grant the same, so savored of oppression and unfairness and an apparent desire to acquire the property of the debtor for a mere pittance that, taken in connection with the gross inadequacy of price, it constitutes such an irregularity in the proceedings as to authorize setting aside the sale.

APPEALS from an order of the Superior Court of Orange County denying a motion to set aside the conclusions of law and the judgment and to enter a different judgment, from the judgment, and from an order refusing a new trial.   Z. B. West, Judge.

The facts are stated in the opinion of the court.

E. W. Forgy, Jones & Weller, and John T. Jones, for Appellant.

H. C. Head, R. T. Walters, and Ernest C. Griffith, for Respondent.

ANGELLOTTI, C. J.—This appeal was originally heard and decided by the district court of appeal of the second appellate district, and an application for a hearing in this court was subsequently granted. The following statement as to the nature of the case, the action of the trial court, and the appeals is taken from the opinion of the district court of appeal:

"Karl Wenzel executed to Charles A. Meyer, Jr., as trustee, a trust deed to secure the payment of certain promissory notes made by Wenzel to Fairbanks-Morse and Company, a corporation. Default having been made by nonpayment of one of the notes when it fell due, defendant W. H. A. Sherman, to whom the notes had been transferred, demanded that the real property described in the trust deed be sold by the trustee in accordance with the provisions of the trust deed. Sale was made by the trustee in conformity with that demand and a deed of conveyance was executed to Sherman as purchaser at the sale. Karl Wenzel died on the twenty-seventh day of February, 1915, and the plaintiff was appointed special administrator of his estate. As such administrator the plaintiff instituted this action to obtain a decree requiring that the defendants convey the property to the plaintiff upon payment by him of the amounts due under said notes and deed of trust. The defendants having filed their answer, the case went to trial and the court made its findings and a decree ascertaining the amount of said indebtedness, and requiring that upon payment of that amount with interest as ascertained in the decree, the defendant Sherman should convey the described premises to plaintiff; and it was provided that upon failure to make such conveyance the deed be made by a commissioner appointed for that purpose. Within ten days after the entry of judgment the defendant Sherman gave notice of motion and thereafter in due course made his motion for an order to set aside and vacate the conclusions of law and the judgment and to amend the same and enter another and a different judgment, to wit, a judgment that the plaintiff

take nothing against the defendant and for costs in favor of the defendant. This motion was made as permitted by sections 663 and 663a of the Code of Civil Procedure, upon the grounds that the findings of fact do not support the conclusions of law or the judgment, and that such findings of fact do require conclusions of law and judgment in favor of the defendant. The court having made its order denying that motion, the defendant Sherman has appealed from the order, and also from the judgment and from an order denying his motion for a new trial." It may be added that the amount of indebtedness found by the trial court included all expenses of sale.

It cannot be held that the findings of fact do not support the conclusions of law or the judgment. Regardless of all questions in connection with the matter of the inadequacy of price, it is explicitly found that the trustee's sale of the land was not in compliance with the *terms of the trust deed* and the law in that the notices of sale "were not published twice a week for four weeks next preceding the date of said sale, and in that more than one week elapsed after the last publication of said notices before the date of the said sale." Of course if the trust deed required the kind and manner of notice so specified in the finding, a sale had without giving the same would be invalid. Neither pleadings nor findings of fact show the provisions of the trust deed relative to notice of sale, and the finding to the effect that notice was not published as required by that instrument is conclusive in so far as the motion to vacate the conclusions of law and the judgment and to enter another and different judgment is concerned. The motion, therefore, was properly denied.

The finding just referred to is, however, assailed on the appeal from the judgment and order denying a new trial as being without sufficient support in the evidence. The deed of trust is set out in the statement on appeal, and a reading thereof in connection with the findings of the trial court as to the publication had shows that notice of the sale was published in all respects as required thereby. So far as material, this instrument provided: "Said trustee . . . shall first publish notice of the time and place of such sale, with a description of the property to be sold, at least twice a week for four successive weeks in some newspaper published in the city of Los Angeles, county of Los Angeles, state of California."

The trial court found ''that notices of said sale were published by said trustee in the 'Los Angeles Daily Journal,' a daily newspaper published in Los Angeles County, California, twice a week for four weeks,'' specifying the date of first and last publication. The last publication was on January 22, 1915, and the day noted for the sale was February 6, 1915. Publication of notice in accord with the requirements of the trust deed is thus shown. The point appears to be that the publication was not sufficient because not made for the four weeks ''next preceding the date'' of sale, and this appears to have been the view of the learned trial judge. But the trust deed, as we have seen, contains no such requirement, calling simply for publication ''at least twice a week for four successive weeks.'' Upon this point the district court of appeal said:

''Counsel for respondent have not referred to any decision holding that under a trust deed in the form here presented the publications of the notice of sale must be continued down to the. very time of the sale; therefore, we may be justified in assuming that there is no such decision. In addition to that, however, we have examined some of the principal textbooks and digests and we fail to find any declaration of law in support of respondent's contention. The rule, of course, is that in executing a power of sale the trustee must act in good faith and strictly follow the requirements prescribed by the trust deed with respect to the manner of sale. The date fixed for the sale in the present instance was not unreasonably remote from the period of publication of the notices. The fact that it was a few days later than it might have been after the beginning of publication of the notice was a fact rather favorable than otherwise to the interests of the debtor.'' The finding referred to is without support in the evidence.

This result does not require a reversal, however, if the other findings sufficiently support the judgment. The claim of respondent is substantially that the gross inadequacy of price for which the land was sold by the trustee, in connection with the circumstances found, sufficiently supports the conclusion of the trial court that the sale was inequitable and fraudulent, and that the purchaser should not be allowed to retain the property. The findings of fact, which are conclusive upon us except as to the provisions of the trust deed and a certain

letter hereinafter referred to which are the only matters of
evidence contained in the statement on appeal, show the fol-
lowing facts: The notes of deceased secured by the trust deed
were given to Fairbanks-Morse and Company for the aggre-
gate amount of $536.65 in consideration of the agreement
of the latter to furnish and install certain pumping machinery
on the land of deceased, a parcel of 15 acres in Orange County.
The deed of trust covered all of said land.    The trustee under
the deed, Meyer, was at all times an employee of Fairbanks-
Morse and Company.    The pumping machinery was installed,
and after the first note, one for one hundred dollars, became
due (October 1, 1914), deceased made complaint that the same
was defective, and certain alterations were made therein by
the vendor.    Apparently the machinery was still unsatis-
factory, complaint being made as late as the very day of sale.
In the meantime, Fairbanks-Morse and Company transferred
the notes to defendant Sherman, who was a bill collector who
had theretofore collected bills and accounts for it.    The in-
ference is that they were transferred solely for purposes of
collection.    On or about December 21, 1914, Sherman caused
the trustee to advertise the land for sale under the trust deed.
The first publication of notice was on December 31, 1914, the
sale being noticed for February 6, 1915, "at the west door
of the courthouse in the city of Los Angeles."    On January
6, 1915, Sherman wrote deceased as follows, the letter being
taken from the statement on appeal: "I have your letter of
December 29th, and will say that I do not know anything
about troubles you speak of, regarding the pumping plant.
That is a matter that is between yourself and Fairbanks-Morse
and Company.    As to the trust deed, I have instructed the
trustee to start foreclosure proceedings, so unless you care to
pay the matter off at once, the same will be foreclosed in due
course of time."    Deceased had no actual notice of the in-
tended sale until about one-half hour before the time fixed,
when he went to the place of business of Fairbanks-Morse and
Company for the purpose of negotiating with the latter about
the alleged defects in the machinery, and then and there for
the first time learned of the intended sale.    He at once went
to Sherman and the trustee and talked with them about the
matter, and requested a postponement of the sale for a reason-
able time to enable him to procure the money and pay the
amount due.    The amount due, including expenses of sale,

was only $680.58, and the actual value of the property was not less than six thousand five hundred dollars, subject to a prior mortgage for one thousand five hundred dollars. The trust deed fully provided for and authorized postponements of sale by the trustee. The request for a postponement was denied, and the sale was made to Sherman, the only bidder, for five hundred dollars, the amount of his bid. Promptly after the sale deceased procured the necessary money and offered to Sherman a sum sufficient to pay all amounts due, including principal, interest, costs of sale, and expenses, on condition that Sherman reconvey the property to him, and his offer was rejected. The trustee executed his deed to Sherman. The price paid was not more than one-tenth the actual value of the land, and was grossly inadequate. Another similar offer was made by this plaintiff to Sherman before the commencement of this action, and the same was refused. It is further found upon these facts "that the sale was inequitable and fraudulent."

Although another rule prevails in some jurisdictions, it is the settled rule in this state that mere inadequacy of price is not a sufficient ground for refusing to give full effect to such a sale as this. This rule was recognized, and many authorities cited, in *Odell* v. *Cox*, 151 Cal. 70, 73, [90 Pac. 194], where an execution sale was involved. In that case, however, a judgment vacating an execution sale was affirmed on the theory that there were circumstances which, considered in connection with the grossly inadequate price paid, were sufficient to support the conclusion of the trial court that there was such unfairness and undue advantage resulting in gross inadequacy of price as warranted the vacating of the sale. It was said in the opinion that, notwithstanding the rule that mere inadequacy of price is insufficient to warrant setting aside the sale, "where the inadequacy is palpable and great very slight additional evidence of unfairness or irregularity is sufficient to authorize the granting of the relief sought." Several authorities were cited in support of this statement, including the case of *Schroeder* v. *Young*, 161 U. S. 334, [40 L. Ed. 721, 16 Sup. Ct. Rep. 512], in which the court, after saying that courts are not slow to seize upon other circumstances impeaching the fairness of the transaction as a cause of vacating it, especially if the inadequacy be so gross as to shock the conscience, said: "If the sale has been attended by any irregu-

larity . . . , if any undue advantage has been taken to the prejudice of the owner of the property, or he has been lulled into a false security; or if the sale has been collusively or in any other manner conducted for the benefit of the purchaser, and the property has been sold at a greatly inadequate price, the sale may be set aside, and the owner may be permitted to redeem.'' This court said: ''We think there can be no doubt under the authorities that where, in addition to gross inadequacy of price, the purchaser has, in the language of the United States supreme court, 'been guilty of any unfairness or has taken any undue advantage' resulting in such gross inadequacy and consequent injury to the owner of the property, he will be deemed guilty of fraud warranting the interposition of a court of equity in favor of the owner who is himself without fault.''

In the case at bar, there can be no doubt that there was gross inadequacy of price. Property worth at least five thousand dollars was purchased for five hundred dollars. The purchaser was the nominal creditor having a claim, including all expenses, of only $680.58, secured many times over by this trust deed. Moreover, he was apparently only an assignee of Fairbanks-Morse and Company for purposes of collection— its employee and representative. The trustee was an employee of the same corporation. All parties knew that a dispute existed between deceased and Fairbanks-Morse and Company as to the adequacy of the pumping machinery furnished in consideration of the giving of the notes, and that deceased was endeavoring to obtain from the company some remedying of the alleged defects. On the very day noted for the sale, without any actual notice that notice of sale was being published or that a time had been fixed therefor, he visited the office of the company for that purpose. It was only then that he learned of the proposed sale, only one-half hour before the time fixed. The letter written to him on January 6, 1915, by Sherman was couched in such terms as to convey to the mind of deceased that ''foreclosure proceedings,'' as they were termed therein, had *not* as yet been commenced, and, as substantially found by the trial court, such proceedings *would* actually be commenced only ''in due course of time,'' and this, although a time for the sale had actually been fixed and notice by publication actually commenced nearly a week before. Whether by design or otherwise, it was well calculated to lead deceased

to believe that no proceeding for a sale, which would leave in him no right of redemption and would effectually cut off all his rights in regard to his property, had as yet been begun. It certainly tended to lull him into a false security to this extent, if indeed the use of the term "foreclosure proceedings" did not convey to his mind the idea of proceedings of which actual notice would be given him. Learning that such a sale was in fact noticed only one-half hour before the time fixed therefor, he requested of both the purchaser and the trustee a postponement for a reasonable time to enable him to procure the proportionately small amount of money to pay the amount due. This request, perfectly reasonable under the circumstances and one that could be granted without in the slightest degree prejudicing the creditor in so far as the collection of the full amount due was concerned, was refused, with the result that the whole property was sold to the creditor for one-tenth of its actual value. We are of the opinion that under all the circumstances the refusal of the creditor to consent to a postponement and of the trustee to grant the same so savored of oppression and unfairness and an apparent desire to acquire the property of deceased for a mere pittance, that, taken in connection with the gross inadequacy of price, it constitutes such an irregularity in the proceedings as to sufficiently support the conclusion and action of the trial court.

The judgment and the order denying a new trial and the order denying the motion to vacate the conclusions of law and judgment and to enter another and different judgment are affirmed.

Sloss, J., Shaw, J., Melvin, J., and Henshaw, J., concurred.

Rehearing denied.