[L. A. No. 7174. In Bank.—January 30, 1924.]

## L. P. SARGENT, Admr., etc., Respondent, v. S. F. SHUMAKER, Appellant.

[1] STATUTORY CONSTRUCTION—EFFECT OF EACH WORD IN STATUTE.— It is an elementary rule of construction of statutes that some effect must be given to every word thereof, if reasonably possible to do so.

[2] ID.—GENERAL WORDS—DISTRIBUTIVE SENSE—RULE.—General words in a legislative act are often, where the sense requires it, and in furtherance of the intention, to be taken distributively, *reddendo singula singulis.* They are thus applied to the subject matter to which they appear by the context most properly to relate and to which they are really most applicable. Such interpretation subjects general expressions or words plainly susceptible of definition or obviously lacking it, because obscure, to the controlling influence of the context, a process or method of analysis widely recognized and adopted by the courts.

[3] DEEDS OF TRUST—SALE—NOTICE.—Where real property to be sold under a deed of trust is situated in the same city in which it is to be sold, the sale being conducted under section 692 of the Code of Civil Procedure, subdivision 3, as far as the posting of notices is concerned, but three notices in three public places in the city are required.

[4] ID.—INADEQUACY OF PRICE—FRAUD.—The mere inadequacy of price, however gross, is not in itself a sufficient ground for setting aside a sale legally made. There must in addition be proof of some element of fraud, unfairness, or oppression before the court will be justified in depriving the purchaser of his legal advantage. Where, however, the price obtained is greatly dis-

---

4. Sale under power in mortgage or trust deed as affected by inadequacy of price, note, 8 **A. L. R.** 1001.

proportionate to the actual value, very slight evidence of unfairness or irregularity will suffice to authorize the granting of relief.

[5] ID.—NOTICE.—The fact that the debtor did not know of the pending sale made under a deed of trust and was not notified thereof is not, standing alone, of any importance.

[6] ID.—MANNER OF SALE—WHEN DEBTOR NOT INJURED.—Where there was no bidder who attended, or who would have attended under any circumstances, a sale under a deed of trust for the purpose of bidding, except the person who bought. the property, the debtor could not have been injured by the low tone of voice and hurried manner in which the sale was alleged to have been conducted, if it was sufficiently audible and deliberate to enable the purchaser to make the bid he desired.

[7] ID.—TIME OF PAYMENT — EXTENSION — FINDINGS — INSUFFICIENCY OF EVIDENCE.—In this action to set aside a sale had under a deed of trust it is held that the evidence was insufficient to sustain a finding that the debtor asked for additional time to pay the notes.

APPEAL from a judgment of the Superior Court of Imperial County. M. W. Conkling, Judge. Reversed.

The facts are stated in the opinion of the court.

Ault & Anderson and O'Melveny, Millikin, Tuller & Mac-Neil for Appellant.

James W. Glassford for Respondent.

MYERS, J.—The defendant appeals herein from a judgment in favor of plaintiff in an action to quiet title and to set aside a trustee's sale under power of sale in a trust deed, and to cancel the deed executed pursuant thereto, or to compel a reconveyance of the property. The essential facts may be stated as follows: On February 15, 1918, one E. W. Myers, who was then the owner of the property involved herein, executed a trust deed conveying the same to Frank D. Hevener, trustee for the International Bank as beneficiary, to secure the payment of principal sums aggregating $5,000, together with interest thereon upon promissory notes executed by said Myers to said bank as payee. Myers died September 12, 1919, and letters of administration upon his estate were duly issued to the plaintiff herein. The promissory notes became due February 15, 1920, and remained unpaid as to the principal thereof, as well as certain install-

ments of interest. April 24, 1920, the bank, as beneficiary, executed and served upon the trustee its declaration of default and its demand that the trustee proceed to sell the property as provided in the trust deed. April 27, 1920, the bank, as beneficiary, executed its written notice of intended sale under the deed of trust, which was duly recorded in the office of the county recorder May 7, 1920. Thereafter in the following August the trustee caused to be posted and published notices of sale under the deed of trust, which was noticed for September 7, 1920, at 10 o'clock A. M. At the time and place specified in the notice the trustee offered the property for sale and sold the same to defendant Shumaker, who was the only bidder therefor at said sale, for the sum of $5,654.69. The purchase price was thereupon paid to the trustee, who executed and delivered a deed of conveyance to said purchaser. Thereafter, in November, 1920, the plaintiff commenced this action by filing a complaint in an ordinary action to quiet title. After the trial of this action he filed a second amended complaint, which was in two counts or causes of action. The first count pleaded the conventional action to quiet title, and the second count sets up the facts with respect to the execution of the trust deed and the trustee's sale thereunder; alleged that said sale was void by reason of the alleged failure to post or publish notice thereof in the manner required by law and by the provisions of the trust deed therefor, and in addition thereto alleged certain irregularities in the conduct of the sale, which will be hereafter noted more in detail, and prayed for a cancellation of the trustee's deed, a reconveyance from the purchaser and a decree quieting plaintiff's title. The trial court found most of the controverted facts in favor of plaintiff and made its interlocutory decree wherein it adjudged the plaintiff, as administrator, to be the owner in fee simple of the described premises, subject to the payment by him to defendant Shumaker of the sum of $5,769.15, and decreed that upon such payment said defendant should execute and deliver to plaintiff a good and sufficient deed of conveyance of said premises, and that in default of the execution of such deed upon the payment of said sum that the same be executed by the county clerk, who was appointed a commissioner for that purpose. The sum of $5,769.15 was the balance arrived at by crediting defendant with the amount

paid by him as the purchase price, together with additional sums paid by him in discharging delinquent taxes against the property and an attorney fee allowed him by the court, and charging him with all moneys which he had collected as rentals from the property.

It was the theory of the plaintiff, evidently concurred in by the learned trial judge, that the trustee's sale was utterly void because of the failure to post notice thereof as required by law and by the provisions of the trust deed. It is conceded that the notice of sale was duly published and for the required length of time. It is conceded also that the notices thereof were duly posted and for the required length of time in three public places within the city of Calexico, within which the property was situated and was to be sold and was sold. But it is respondent's contention that the trustee was required in addition thereto to post a fourth notice at the precise place where the property was to be and was sold. This contention presents the most important question involved upon this appeal.

The statute required (Civ. Code, sec. 2924) and the trust deed provided that notice of the proposed sale should be posted "in the manner and for a time not less than that required by law for sales of real property upon execution." We are thus directed to section 692 of the Code of Civil Procedure, which prescribes the manner of giving notice of sale under execution. As that section existed at the time with which we are here concerned, it provided that notice thereof must be given as follows:

"1. In case of perishable property: by posting written notice of the time and place of sale in three public places of the township ^r city where the sale is to take place, . . .

"2. In case of other personal property: by posting a similar notice in three public places in the township or city where the sale is to take place, . . .

"3. In case of real property: by posting a similar notice, particularly describing the property, for twenty days, in three public places of the township or city where the property is situated, and also where the property is to be sold, and publishing a copy thereof, . . . "

It is obvious that the provisions of subdivision 3 of the section must have been intended to provide for and apply to two different situations, one where the property is situ-

ated in the same township or city wherein it is to be sold and the other where the property is situate in one township or city and is to be sold in some other township or city. It is respondent's contention that the section makes the same requirement as to posting applicable to both situations, and that it should be construed as requiring in either case the posting of four notices, three of which must be posted in three public places within the township or city where the property is situated, and the fourth at the place (meaning the very place) where the property is to be sold. Appellants, on the other hand, contend that the section is to be construed as if it read as follows: " . . . by posting . . . twenty days in three public places of the township or city where the property is situated, and *in three public places of the township or city* where the property is to be sold," and that the effect thereof, where the property is situated in one township or city and is to be sold in another, is to require the posting of six notices in three public places in each such township or city, and that the effect thereof, where the property is to be sold in the same township or city, is to require the posting of but three notices in three public places within such township or city. Respondent replies that the adoption of such a construction would be judicial legislation, in that it necessitates adding to the section words which were not placed therein by the legislature. This criticism, however, is equally applicable to the construction contended for by respondent. It is obvious that the phraseology used in subdivision 3 is in condensed form when compared with that used in subdivisions 1 and 2, each of which is complete upon its face. The same conclusion is compelled when we consider that subdivision 3 must have been intended to apply to each of the two different situations above referred to. Our object then must be to ascertain the legislative intent, and in this endeavor we may consider not alone the text but also the context, and these in the light of the purpose to be subserved by the provisions under consideration.

[1] It is an elementary rule in the construction of statutes that some effect must be given to every word thereof if reasonably possible so to do, and the word "also" is of evident importance in this connection. The primary meaning thereof and that in which it is most commonly used is "in like manner" or "in the same manner." (See 1 Words

& Phrases, 2d series, 196; 1 Words & Phrases, 359, and cases there cited.) It is thus a word of reference, directing our attention to that which antecedes. As used herein it has to do with the posting of notices, and the only specifications of the *manner* of such posting to be found in the antecedent phraseology which could be adopted by such reference are "for twenty days" and "in three public places of the township or city." It thus seems reasonable to suppose that the word "also" was here used as a brief substitute for the repetition of those two phrases. This conclusion appears the more probable when we consider that the provisions of subdivisions 1 and 2 above quoted may be regarded as evidencing a legislative determination that in so far as notice by posting is concerned the posting in three public places within a township or city is sufficient for the giving of notice to the inhabitants thereof.

It is true that when we consider this subdivision as requiring the posting of but three notices in cases where the sale is to be made in the township or city wherein the property is situated, the words "and also" seem wholly inappropriate thereto, but this consideration becomes unimportant when we recall that the section is designed to apply to the two different situations above referred to, and that it evidences an attempt at condensed composition.

[2] "General words in a legislative act are often, where the sense requires it, and in furtherance of the intention, to be taken distributively, *reddendo singula singulis*. They are thus applied to the subject matter to which they appear by the context most properly to relate, and to which they are really most applicable." (Lewis' Sutherland on Statutory Construction, 2d ed., sec. 442.)

"Such interpretation subjects general expressions or words plainly susceptible of definition or obviously lacking it, because obscure, to the controlling influence of the context, a process or method of analysis widely recognized and adopted by the courts." (*Hope Natural Gas Co.* v. *Shriver*, 75 W. Va. 401 [83 S. E. 1011].)

In the same case it is said: "A rule of construction sanctions reference of words general in their terms, such as those of the exception, to their places, subjects or connections as shown by other words or provisions in the context. It is briefly and tersely expressed by the Latin phrase '*Red-*

*dendo singula singulis,'* literally translated, 'By referring each to each; or referring each phrase or expression to its appropriate object.' 34 Cyc. 765. . . . A command or direction to go to London by rail and steamer would not be understood as requiring the use of both railroad and steamer at the same time and on the same portions of the route. The order would be interpreted and acted upon, *reddendo singula singulis.* In execution thereof, the railroad would be employed to New York, the steamer from New York to Liverpool, and the railroad again from Liverpool to London.'' (See, also, *Building & Loan Assn.* v. *Sohn,* 54 W. Va. 101 [46 S. E. 222]; *Wells Fargo & Co.* v. *Board of Equalization,* 56 Cal. 194, 198; *Coffin* v. *Hussey,* 12 Pick. (Mass.) 289; *Commonwealth* v. *Jordan,* 18 Pick. (Mass.) 228; *Commonwealth* v. *Cooke,* 50 Pa. St. 201; *Ludlow* v. *Bowne,* 1 Johns. (N. Y.) 1 [13 Am. Dec. 277, 289]; *Hayes* v. *Kig,* 37 N. J. Eq. 1; *Thornton* v. *Thornton,* L. R. 20 Eq. 599, 604.)

[3] Applying this process to the section under consideration and reading its general words distributively, we are led to the construction contended for by appellants as the most reasonable and probable expression of the legislative intent. This conclusion is strongly confirmed by the circumstance that the four leading compilations of legal forms in use in this state have adopted without question the same construction. (Cowdery's Legal Forms, p. 623; Church's Forms of Law and Business, p. 1126; 1 Jury's Adjudicated Forms of Pleading and Practice, p. 723; 2 Sutherland's Forms, p. 1423.) The fact that the correctness of this construction has never been hitherto questioned, so far as we are advised, strongly suggests that the members of the bar throughout this state have concurred therein with practical unanimity. This circumstance, while in no way conclusive, is most persuasive that the construction so concurred in is correct. We conclude, therefore, that in a case such as this, wherein the property was to be sold in the same city in which it was situated, the law required the posting of but three notices in three public places thereof.

We come now to the question whether under the facts alleged, proved, and found, the plaintiff was entitled to have the sale set aside on the ground of irregularities in the conduct thereof, coupled with inadequacy of the purchase price. As above stated, it was the evident view of the plaintiff and of the trial judge that the sale was void for insufficient no-

tice, but certain facts were alleged and found by the court which would be relevant to an action to avoid the sale on the ground of constructive fraud, and respondent contends that they are sufficient to sustain the judgment herein, even though it be conceded that the notice of sale was duly given. It was alleged in the second amended complaint and found by the court upon sufficient evidence that the property was of the value of $25,000. It was sold for $5,654.69, to which should be added perhaps an amount equal to the aggregate liens against it for delinquent taxes and tax sales amounting to some $1,300, together with an additional sum for taxes then unpaid but not yet delinquent. But adding all of these sums to the price actually paid it still represented less than one-third of the actual value of the property, and must, therefore, be said to have been clearly inadequate. There is neither allegation nor finding herein of any actual fraud or fraudulent intent upon the part of either of the defendants. That this omission was intentional is evidenced, as we are told by counsel, by the further fact that the trial judge in his written opinion filed herein expressly stated: "The court finds that both purchaser and trustee acted in good faith. . . ." We are thus relegated to a consideration of the single question of constructive fraud. [4] It is well settled in this state that mere inadequacy of price, however gross, is not in itself a sufficient ground for setting aside a sale legally made. There must in addition be proof of some element of fraud, unfairness, or oppression before the court will be justified in depriving the purchaser of his legal advantage. Where, however, the price obtained is greatly disproportionate to the actual value, very slight evidence of unfairness or irregularity will suffice to authorize the granting of the relief. (*Rauer* v. *Hertweck,* 175 Cal. 278 [165 Pac. 946]; *Winbigler* v. *Sherman,* 175 Cal. 270 [165 Pac. 943]; *Bock* v. *Losekamp,* 179 Cal. 674 [179 Pac. 516]; *Odell* v. *Cox,* 151 Cal. 70 [90 Pac. 194]; *Baldwin* v. *Brown, post,* p. ——.) The rule is stated in *Odell* v. *Cox, supra,* in the following language: "Where, in addition to gross inadequacy of price, the purchaser has, in the language of the United States Supreme Court, 'been guilty of any unfairness or has taken any undue advantage' *resulting in such gross inadequacy* and consequent injury to the owner

of the property, he will be deemed guilty of fraud warranting the interposition of a court of equity in favor of the owner *who is himself without fault.''* (Italics added.) The circumstances of claimed unfairness or irregularity relied upon by the respondent herein, in addition to the inadequacy of consideration, are: (1) that the plaintiff did not know of the proposed sale and was given no notice thereof by either of the defendants; (2) that the trustee did not announce said sale or call for bids in an audible tone of voice sufficient to enable persons in the immediate vicinity to know that the trustee was selling the property; (3) that said sale was conducted in a hurried manner to an extent which made it impossible for persons present to bid on said property, and (4) that the defendant bank by a letter to plaintiff had caused plaintiff to believe that the said bank would not proceed to sell the property.

[5] The circumstance that the plaintiff did not know of the pending sale and was not notified thereof by either of the defendants is not, standing alone, of any importance herein. As this court said in *Rauer* v. *Hertweck, supra:* ''There was no obligation upon them to give him any such notice. The statute defines how notice of an execution sale must be given. To say that a sale may be set aside because some other notice was not given would be to amend the statute, and this we cannot, of course, do. When the officer conducting the sale has done the acts prescribed by the code, he has done his full duty. He is not required to search for the debtor and give him any further notice than that which the law exacts. Nor is any such duty imposed upon the judgment creditor. Much less is one who may contemplate bidding at an execution sale called upon to concern himself with the question whether the debtor has actual knowledge of the proceeding.''

Plaintiff alleged and the court found: ''That said sale was not made at public auction, as provided by said trust deed, in that the trustee did not announce said sale, or call for bids, in an audible tone of voice, sufficient to enable persons in the immediate vicinity of the place where said sale was held, to ascertain or know that the trustee was selling the property herein described, and that said sale was conducted in a hurried manner, to an extent which made it impossible for persons present at the place of sale to bid

on said property, either *en masse,* or in parcels.'' It is not alleged in the complaint or found by the court that any other person actually was present at the place of sale to bid on said property or that any person was prevented from so doing either by the inaudible tone of voice or the hurried manner in which the sale was conducted. It is neither alleged nor found that there was any other person in existence who was ready, able, and willing to bid on said property. These omissions become the more significant when we reflect that the second amended complaint was not filed until the trial had been had and concluded. Respondent now asserts that it appears from the evidence that one Brown was present at the sale for the purpose of bidding•thereat, and would have bid the sum of $8,000 for one of the properties included in the sale, but was prevented from so doing by reason of the circumstances above mentioned. Appellants reply that it conclusively appears from the evidence that Brown was neither ready, able, nor willing to bid upon this property, for the reason that it appears without conflict that he was unable to make payment therefor, °and that under the terms of the trust deed the trustee was empowered to sell only ''for cash in gold coin of the United States.'' Appellants confidently assert that if the trial court had found that any bidder was prevented from bidding at this sale by reason of the irregularities complained of, that such finding would have been contrary to and wholly unsupported by the evidence. It is unnecessary for us to so determine. It is sufficient to say for the purposes hereof that such a finding would be in no way compelled or required by the evidence herein, and ''it is not within the province of this court to infer from the findings ultimate facts which would support the judgment when such facts do not necessarily follow from the facts actually found.'' (*Rossini* v. *St. Paul etc. Ins. Co.,* 182 Cal. 415, 421 [88 Pac. 564].)

While it is true that where the inadequacy of price is palpable and great, slight irregularities in conjunction therewith will authorize a court to set aside the sale, we are of the opinion that such irregularities, to have this effect, must have conduced to the inadequacy of the price, or in some other way have contributed to the injury of the plaintiff. This conclusion is indicated by the language commonly used in the statement of the rule. Thus in the rule as stated in

*Odell* v. *Cox, supra,* we find the phrase "any unfairness or . . . undue advantage *resulting in such gross inadequacy. . . .* " (Italics added.) The same phraseology is found in the statement of the rule in *Winbigler* v. *Sherman, supra.* The same thought is indicated in the statement of the conclusion in *Rauer* v. *Hertweck, supra,* that "the resulting loss can more properly be attributed to his [plaintiff's] neglect of his own interests than to any unfairness on the part of the judgment creditor or the purchasers." The rule is thus stated in Freeman on Executions, section 309: "If the inadequacy can be *connected with or shown to result from* any mistake, accident, surprise, misconduct, fraud or irregularity, the sale will generally be vacated, *unless the complainant was himself in fault,* or the rights of innocent third parties have become dependent upon the sale." (Italics added.) The sale *en masse* of several known lots or parcels, in the absence of special circumstances to justify it, is clearly an irregularity, but this court has frequently held that such an irregularity will not justify vacating the sale, in the absence of an affirmative showing that it operated to the actual injury of the owner. (*Hudepohl* v. *Liberty Hill etc. Co.,* 94 Cal. 588 [28 Am. St. Rep. 149, 29 Pac. 1025]; *Meux* v. *Trezevant,* 132 Cal. 487, 489 [64 Pac. 848]; *Summerville* v. *March,* 142 Cal. 554, 558 [100 Am. St. Rep. 145, 76 Pac. 388].) These cases are not conclusive upon the question at bar, for the reason that in neither of them was the purchase price inadequate. But the language used in discussing the question is significant. *Meux* v. *Trezevant, supra,* involved a foreclosure sale wherein the premises were sold *en masse,* although the decree of foreclosure required that they be sold in separate parcels. This court said: "Unless it is made to appear that a larger sum would have been realized from the sale of the property if it had been sold in separate lots or parcels, or that the sale of less than the whole tract would have brought sufficient to satisfy the writ, the sale will not be set aside. (*Hudepohl* v. *Liberty Hill etc. Co.,* 94 Cal. 591 [28 Am. St. Rep. 149, 29 Pac. 1025].) In this case there is no statement in defendant's affidavits tending to show that the property would have brought more if sold separately, or that the sale of less than the whole would have satisfied the writ. On the contrary, the affidavits on the part of defendant show with-

out contradiction that the property sold for its full cash value, and that it would not have brought as much as it sold for if it had been sold in separate lots. The only pretense of injury set forth in defendant's affidavit is, that he was injured by said sale in one lot, because it 'tended to reduce the number of bidders,' and because 'it deprived affiant of the right to redeem either of said colony lots separately.'

"This is clearly insufficient. Defendant does not show that he could redeem, or that he ever desired to or now desires to redeem, any part of said property. Courts will not set aside a sale under foreclosure for light or trivial reasons. It must appear that there has been a material departure from the mandates of the decree, or the law governing such sales, to the injury of the party applying to have the same set aside. Nor can injury be presumed from mere irregularities."

[6] Assuming in the instant case that no bidder other than the defendant Shumaker attended the sale for the purpose of bidding thereat, or would have attended it under any circumstances, then plaintiff could not conceivably have been injured by the low tone of voice or hurried manner in which the sale was conducted, if it was sufficiently audible and sufficiently deliberate to enable Shumaker to make the bids he desired. If such was the case, as we must assume under the findings, plaintiff could not have been injured by these claimed irregularities. We are of the opinion that under these circumstances they afforded no ground for relief. Appellants contend that the findings to the effect that the sale was made in an inaudible tone of voice and in a hurried manner are wholly contrary to and unsupported by the evidence. In view of the conclusion just announced it is unnecessary to consider this contention.

As to the fourth claimed irregularity the plaintiff alleged and the court found:

"That on July 28, 1920, the International Bank through and by its attorney informed the plaintiff in writing, that it, the said bank, would take such necessary action against the estate on the notes secured by said trust deed 'as may be desirable,' and which notice was in reply to a letter written by the plaintiff to the International Bank on the 20th day of July, 1920, in which the plaintiff asked the said de-

fendant bank for an additional length of time to pay the notes secured by said trust deed.''

[7] Appellants assert that the concluding phrase of said finding, ''in which the plaintiff asked the said defendant bank for an additional length of time to pay the notes secured by said deed of trust'' is wholly unsupported by the evidence, and to this we agree. The above-quoted allegation in plaintiff's complaint was immediately followed by the allegation, ''and which letter of July 28, 1920, written by the said bank to plaintiff, caused the plaintiff to believe that the said bank would not proceed to sell the property described in said Exhibit A. . . . '' This allegation was denied by the defendants and the court made no finding thereon. A consideration of the evidence upon this point makes it apparent that if a finding had been made responsive to this issue it would have been adverse to plaintiff's contention. This leaves the situation wholly inadequate to bring the case within the rule of *Winbigler* v. *Sherman, supra,* relied upon by respondent, wherein it was said that by means of a somewhat similar letter written by the holder of the note to the owner of the property the latter had been *''lulled into a false security.''* There is not the slightest evidence herein that the letter here in question had any effect of lulling the plaintiff into a false security. On the contrary, he testified that he could not say whether he had ever received the letter or not. He was then shown a copy of the letter and asked to state whether or not he had received the original, and he replied: ''No, I don't remember receiving that letter.''

Respondent insists that the present case is substantially identical with *Odell* v. *Cox* and *Winbigler* v. *Sherman, supra,* and must therefore be ruled by those decisons, in each of which a judgment setting aside the sale was affirmed by this court. Appellants assert that those decisions have been rendered inapplicable by the amendment in 1917 of section 2924 of the Civil Code, so as to require as a condition precedent to such a sale that the beneficiary shall first record in the office of the county recorder a notice of his intention to sell the property, which notice shall be recorded at least three months prior to the sale. They argue that such record being created for the special benefit of the debtor, he is charged in law with notice of its contents, whether he has

actual knowledge thereof or not. We are not prepared to go thus far, nor do we deem it necessary to do so in the disposition of the instant case. There are important elements in each of the cited cases which serve to distinguish it from the case at bar.

*Odell* v. *Cox* was not a case of "mere inadequacy of price" coupled with irregularities in the conduct of the sale. There were no such "irregularities." Every requirement of the law with respect to the conduct of the sale was fully complied with. Neither was it a case of "mere inadequacy of price," which means "simply an inequality in value between the subject matter and the price." The price there bid was so insignificant as to amount in practical effect to nothing at all. In the language of the court: "The amount bid, $26.50, when considered in connection with property having a cash value of two thousand dollars in the market, was a mere nominal sum, and the purchaser acquired this valuable property for practically nothing." This fact, which is iterated and reiterated throughout that opinion, was evidently regarded as a controlling factor in that decision. That case may be taken as authority for the conclusion that where the purchase price at such a sale is so small as to amount to practically nothing, the transaction may be regarded in equity as no sale at all, but rather a device for obtaining the debtor's property without compensation, and may be relieved against at the instance of an owner who was himself entirely without fault or negligence and whose lack of knowledge was "entirely excusable." In the case at bar the purchase price can by no means be regarded as merely nominal, however disproportionate it may have been to the real value of the property.

In *Winbigler* v. *Sherman* the purchase price of $500 for property worth $5,000, though much more disproportionate than in the instant case, could not be regarded as merely nominal. But there were circumstances of unfairness and oppression in that case which are absent from the case at bar. It is true that one of the notes secured by the trust deed there in question was past due and unpaid, but it was for only $100, and those notes had been given in payment for certain pumping machinery which was defective and was not in accordance with the contract and was not properly installed, so that the maker had a good and valid

defense to an action upon the notes. Negotiations between the maker of the notes and the holder thereof for a correction of these defects were in progress right up to the time of the trustee's sale. The maker learned of the proposed sale only a half hour before it was to take place. He then went to the trustee and the holder of the notes and pleaded with them to postpone the sale for a reasonable time to enable him to get the money to pay them, which was refused. The sale having taken place, he promptly procured the money and tendered to the purchaser, who was the holder of the notes, the entire amount due upon all of the notes, together with all the costs of making the sale. The court justly concluded that the refusal to grant even a brief postponement of the sale, under the circumstances, could have had but one object and purpose—namely, to obtain the debtor's property for "a mere pittance." This was an act of such evident unfairness and oppression as to amount to a constructive fraud upon the debtor, who was himself without fault.

In each of the two cases last under consideration emphasis is placed upon the circumstance that the debtor's lack of knowledge that the sale was about to take place was not due to his own fault or negligence. In *Odell* v. *Cox*, which involved a sale under execution, the fact that the judgment debtor was amply solvent was well known to the creditor and the former had taken an appeal from the judgment and filed a good and sufficient stay bond. But an execution had been issued, without the debtor's knowledge, between the time of the entry of the judgment and the filing of the stay bond. The court said: "This lack of knowledge on his part was entirely excusable. Probably neither he nor his attorneys had any reason to anticipate, in view of his solvency and the appeal about to be taken, that an execution would be obtained to enforce the judgment."

In the case at bar no good reason is apparent, either in the findings or in the evidence, why the plaintiff should not have expected and anticipated that the bank would proceed with the enforcement of the trust deed according to its terms. The amount due was in excess of $5,000. It had been delinquent at the time of the sale nearly seven months. In the meantime the taxes had been unpaid, the property had been sold for taxes, and other taxes thereon were delin-

quent. The plaintiff was collecting the rents, but was making no payments on account of either the indebtedness or the taxes. It is true that the estate was involved in litigation in the sense that a contest was pending therein over an alleged will of the deceased, but it does not appear that the plaintiff as administrator was a party thereto or in any way interested therein or affected thereby. It appears that there were not sufficient funds in the assets of the estate to enable him to pay these notes. But it does not appear that he ever made an effort to procure a loan elsewhere to enable him to make the payment, or even that he ever asked the defendant bank for an extension of time for the payment. These circumstances serve to bring this case fairly within the rule of *Rauer* v. *Hertweck, supra,* which was summed up in the following language: "The attempt to show unfairness in the sale comes down simply to this: that the execution sale was regularly made upon due statutory notice, but that the judgment debtor did not, in fact, know of the sale, and no one gave him notice of it. He did, however, know that a judgment had been entered against him, and must be deemed to have known that his property might be levied on at any time. He failed to pay the judgment, and took no steps to protect his property until many months after the entry of judgment. He then found that a sale had been had, and that the time for redemption had expired. The resulting loss can more properly be attributed to his neglect of his own interests than to any unfairness on the part of the judgment creditor or the purchasers."

The judgment is reversed.

Waste, J., Lawlor, J., Lennon, J., Kerrigan, J., Seawell, J., and Wilbur, C. J., concurred.