[Civ. No. 5170. First Appellate District, Division Two.—August 27, 1925.]

## DAVID W. BILLINGS et al., Respondents, v. FARM DEVELOPMENT COMPANY (a Corporation) et al., Appellants.

[1] FRAUD—FORECLOSURE OF DEED OF TRUST—INNOCENT PURCHASER—JUDGMENT—DAMAGES—PLEADING.—In this action in equity to set aside a foreclosure sale under a deed of trust and the subsequent conveyances of certain real property on the ground that the foreclosure sale was fraudulent, and for general relief, the first trial having resulted in a judgment for the defendants, but the court having granted a new trial as to all the defendants except the grantee of the property whom the court found was an innocent purchaser, and as to said defendant the judgment having become final, there was a conclusive determination that they were not entitled to the specific relief for which they prayed, and all that was left to plaintiffs was a simple action for damages for fraud and deceit.

[2] ID.—DAMAGES—PLEADING.—Fraud without damage is not actionable; and a complaint charging fraud without damage fails to state a cause of action.

[3] ID.—FORECLOSURE SALE—INADEQUACY OF PRICE.—The mere inadequacy of the price bid at the foreclosure sale does not constitute fraud unless the purchaser has been guilty of some deceit or has taken some undue advantage resulting in such gross inadequacy and consequent injury to the owner of the property.

[4] ID.—DAMAGES—PLEADING—EVIDENCE.—In such action, the complaint having been silent in the pleading of any facts justifying

---

1.  See 8 Cal. Jur. 882.
2.  12 Cal. Jur. 765; 2 R. C. L. 388.

an award of punitive damages, and the complaint not having stated sufficient facts to support the judgment for damages for fraud and deceit in behalf of plaintiff husband, who had conveyed to his wife and coplaintiff all his right and interest in the real property prior to the foreclosure sale in question, defendants' objection to the offer of evidence upon that ground should have been sustained as to plaintiff husband.

[5] ID.—WRITTEN CONTRACT—PAROL EVIDENCE.—Parol evidence of any oral contract, which was without consideration, is not admissible to vary a written contract.

[6] ID.—DECLARATION OF DEFAULT—FORECLOSURE SALE.—It was not fraud on defendants' part to declare plaintiffs in default in order to bring about a foreclosure sale under the deed of trust, where plaintiffs were in default and they had ignored frequent demands for payment.

[7] ID.—PURCHASE BY BENEFICIARY—INADEQUACY OF PRICE—EQUITY.— Mere inadequacy of price is insufficient in equity to set aside a foreclosure sale under a deed of trust unless accompanied by fraud; and the beneficiary as the only bidder at the sale is not bound to bid more than he is willing to pay.

[8] ID.—VALID FORECLOSURE—SUBSEQUENT CONVEYANCE—INTENT.—If the facts at and prior to the foreclosure sale were not fraudulent, plaintiffs cannot complain about the purchaser's subsequent conveyance of the property, even though this was manifestly done to hamper plaintiffs in their attack upon the foreclosure sale.

[9] ID.—SUBSTITUTION OF TRUSTEES.—Where the deed of trust authorized the substitution of trustees at the request of the beneficiary, and there was neither pleading nor proof that the substitution was fraudulent or that it caused plaintiffs any damage, such substitution did not constitute fraud.

[10] ID.—FORECLOSURE SALE—PERSONAL NOTICE.—The failure to give plaintiffs personal notice of the foreclosure sale was not actionable, and such notice was not necessary.

(1) 27 C. J., p. 18, n. 40.   (2) 17 C. J., p. 999, n. 52; 26 C. J., p. 1167, n. 62; 27 C. J., p. 37, n. 47.   (3) 41 C. J., p. 1027, n. 91, p. 1028, n. 98, p. 1029, n. 7.   (4) 27 C. J., p. 31, n. 77.   (5) 4 C. J., p. 694, n. 98; 8 C. J., p. 441, n. 74; 22 C. J., p. 1245, n. 24, p. 1257, n. 80; 31 Cyc., p. 87, n. 64.   (6) 26 C. J., p. 1176, n. 6.   (7) 41 C. J., p. 979, n. 7.   (8) 26 C. J., p. 1176, n. 6; 41 C. J., p. 1033, n. 88.   (9) 26 C. J., p. 1176, n. 6.   (10) 26 C. J., p. 1176, n. 6.

5.   See 10 Cal. Jur. 916; 10 R. C. L. 1033.
7.   See 25 Cal. Jur. 90.
8.   See 25 Cal. Jur. 98.
9.   See 25 Cal. Jur. 81.

APPEAL from a judgment of the Superior Court of San Joaquin County. J. A. Plummer, Judge. Reversed.

The facts are stated in the opinion of the court.

H. M. Anthony for Appellants.

A. D. Schaffer and Anthony Podesta for Respondents.

NOURSE, J.—Plaintiffs commenced this action as one in equity to set aside a sale and the subsequent conveyances of certain real property in San Joaquin County, the sale having been made to foreclose a deed of trust executed by them as security for their promissory note in the sum of $1,290. Plaintiffs had judgment against all the defendants except Bates, who was held to be an innocent purchaser for value. The other defendants have appealed from the judgment upon the judgment-roll and a bill of exceptions.

The complaint was filed on February 20, 1920. At a trial had on April 9, 1921, judgment was rendered in favor of all the defendants. On June 24, 1921, a new trial was granted on motion of the plaintiffs as to all the defendants except Bates. As to him the judgment became final, holding that he was an innocent purchaser of the land in suit and denying plaintiffs the right to have the sale and the subsequent conveyance set aside. On March 8, 1922, the cause came before the court, sitting without a jury, for a second trial as to the remaining defendants. At that time these defendants moved that no testimony be received on the complaint on the ground that the action, having been brought to set aside the trust sale and the subsequent conveyances and for possession of the realty, the final judgment in favor of Bates disposed of all the issues raised by the pleadings and left plaintiffs the single remedy of damages for fraud. This motion was denied and the cause was tried by the court, resulting in a judgment against the defendants, other than Bates, in the sum of $1,855—$1,355 being the difference between the value of the property and the amount the plaintiffs still owed under their deed of trust, and $500 being awarded as punitive damages.

On May 10, 1915, the plaintiffs executed their promissory note in favor of the defendant Farm Development Company,

a corporation, for $1,290, payable in equal monthly install-
ments of $15 on the tenth day of each month, with interest
at six per cent per annum, payable quarterly. This note
was secured by their trust deed in which W. F. Postel and
Robert W. Dennis were made trustees and will be referred
to herein as the "Billings" note. On December 22, 1917,
the defendants, Farm Development Company, and W. L.
Hogan, executed their joint and several note in favor of
W. F. Postel in the sum of $200, bearing interest at the rate
of five per cent per month, compounded monthly. This will
be referred to herein as the "Hogan" note. On November
22, 1918, the payee of this note sold it to A. D. Schaffer,
an attorney at law, who, however, took the note in the name
of one Casey, who, it is claimed, held it for the benefit of
the plaintiff, D. W. Billings. This note was at all times
secured by the pledge of the Billings note and the trust deed
of May, 1915. The explanation of this singular transaction
is twofold. The plaintiff D. W. Billings had recently been
declared a bankrupt, and, having made a deed of gift of the
property in suit to his wife, he was advised by his attorneys
that it was necessary to further conceal his assets from his
creditors by having the Hogan note in a fictitious name.
Secondly, he was being continually pressed by Hogan for
payment on his own note and he found it necessary to con-
ceal his ownership of the Hogan note to avoid a set-off
against his own, and this enabled him to collect five per cent
interest monthly, compounded, against his own simple six
per cent per annum interest. During all this time the plain-
tiffs were very irregular in their payments upon the original
obligation and from March, 1918, to October, 1919, made no
payments at all upon the principal, but paid the interest
only. During all this time frequent and repeated demands
were made upon them for payment and in each case they
led the defendant to believe that satisfactory adjustments
were soon to be made.

About a month prior to October 28, 1919, after frequent
but futile attempts to discover the mysterious Casey, who
was the legal owner of the Hogan note, the defendant W. L.
Hogan learned from Schaffer that he held the note for the
benefit of plaintiff D. W. Billings and that Casey was merely
a figurehead. The defendant W. L. Hogan then informed
Schaffer that he had been endeavoring to find the holder

of the note in order to pay it, and demanded that Schaffer give him a statement of the amount due. About a month later, and on October 28, 1919, these parties met again for the purpose of making a settlement, and Schaffer then informed this defendant that D. W. Billings had applied from the Hogan note all moneys which became due on the Billings note since March, 1919, amounting to $120 principal and $29 interest. This was the first information given Hogan that Billings actually owned this note and that payments had been applied by him upon the other obligation. In order to settle his note and to secure possession of the deed of trust which had been pledged with Postel, Hogan was compelled by Schaffer to give him two receipts, one for $120 and another for $29.11 as payments on principal and interest on the Billings note, and also to pay to Schaffer the sum of $218.64, which was represented to be the full amount due on this note. The receipts which Hogan gave to Schaffer at this time were, however, *on account* of principal and *on account* of interest and at the same time Hogan insisted that the plaintiffs were still in default in their payments upon the trust deed. A few days after this settlement Schaffer informed Hogan that he had made a mistake in estimating the interest on the $200 note and demanded an additional payment of $62.72. Hogan refused to pay this amount and then Schaffer directed him to apply it on subsequent payments as they became due under the Billings deed of trust. Hogan denied the claim that anything was due from him after the settlement, and on November 25, 1919, declared the plaintiffs in default. The defendant L. J. Hogan, who was the wife of W. L. Hogan, was then substituted as trustee under the deed for the purpose of making a sale. All the required steps, including the publication of notice of sale, were duly taken and the property was on December 27, 1919, sold to W. L. Hogan for the sum of $501 and he immediately thereafter sold the property to the defendant Bates.

[1] The complaint was framed on the theory that the sale had been fraudulent and the plaintiff prayed for an order setting aside the conveyances, for possession of the property, and for general relief. In the first trial the court found adversely to the plaintiffs in so far as the defendant Bates was concerned, and this judgment having become final

there was a conclusive determination that the plaintiffs were not entitled to the specific relief for which they prayed. When the second trial began all that was left to the plaintiffs was therefore a simple action for damages for fraud and deceit. [2] Looking at the complaint in this light, it falls far short of being a model pleading because, in an action for damages the complaint must allege damage in a definite amount. (*Munson* v. *Fishburn*, 183 Cal. 206, 220 [190 Pac. 808]; 8 Cal. Jur., p. 882.) In fact this is required by section 426 of the Code of Civil Procedure. There are no allegations of damage and no specific prayer for damages. It is axiomatic that fraud without damage is not actionable, and a complaint charging fraud without damage fails to state a cause of action. Here one of the charges of fraud is the substitution of L. J. Hogan as a trustee and it is claimed that this substitution was a part of a plot and a conspiracy to cheat and defraud the plaintiffs, but it does not appear that the original trustee, or some other substituted trustee, would not have been compelled to do or would not have done the same acts performed by L. J. Hogan. There is no specific allegation of injury from the substitution and nothing from which injury might be inferred. [3] The mere inadequacy of the price bid at the foreclosure sale does not constitute fraud unless the purchaser has been guilty of some deceit or has taken some undue advantage "resulting in such gross inadequacy and consequent injury to the owner of the property." (*Odell* v. *Cox*, 151 Cal. 70 [90 Pac. 194]; *Sargent* v. *Shumaker*, 193 Cal. 122, 129 [223 Pac. 464]; *Jones* v. *Sierra Verdugo Water Co.*, 63 Cal. App. 254, 263 [218 Pac. 454].) The other acts which are set forth in the complaint as constituting a part of this conspiracy to defraud the plaintiffs are the declaration of plaintiffs' default, publication of notice of sale, the sale for an inadequate price and the subsequent conveyance to Bates. But none of these acts is alleged to have been wrongful except the declaration of plaintiffs' default, and it does not appear from the complaint how or in what manner any of them were not authorized by the contract between the parties or to what extent any of them damaged the plaintiffs.

[4] So far as the plaintiff D. W. Billings is concerned it appears from the complaint that on June 18, 1917, he had

conveyed to his wife and coplaintiff all his right and interest in the property. The right to the return of the property having been foreclosed by the judgment in favor of Bates his measure of damages for the alleged fraud was quite different from that of his coplaintiff in this connection. In addition to this the complaint is silent in the pleading of any facts justifying an award of punitive damages. As to the plaintiff D. W. Billings particularly it is apparent that this award is not justified by the pleadings or the evidence, and that, as to the judgment for general damages, it is far in excess of any actual damage which he suffered. We are satisfied that the complaint does not state sufficient facts to support the judgment for damages for fraud and deceit in behalf of plaintiff D. W. Billings and that the defendants' objection to the offer of evidence upon that ground should have been sustained as to that plaintiff at least.

On the facts of the case the outstanding question before the trial court was whether the plaintiffs were in default at the time of the sale. Though the defendants expressly raised the issue in their answer the trial court did not expressly find on it. Inferentially the court held adversely to this defense as otherwise it would not have held that the defendants were guilty of fraud in making the sale. Assuming the court to have so held the conclusion cannot be supported without the aid of finding number eight, wherein the court found that prior to March 10, 1918, D. W. Billings and W. L. Hogan had orally agreed to waive payments on the principal from March 10, 1918, to March 10, 1919. By deducting these twelve installments, amounting to $180, the plaintiffs have contended that when the default was declared there was but $18.30 due on the note. The error of the finding is twofold—it is wholly beyond the issues, and it is unsupported by the evidence. The complaint does not contain a word regarding any waiver of payments other than the acceptance of interest and principal on some other than the tenth day of each month. There is no suggestion that any new arrangement was made for the twelve months between March, 1918, and March, 1919. To the contrary the complaint alleges that all payments of principal and interest were made as required by the note and trust deed, and particularly that during the years 1918 and 1919 the plaintiffs "made and required monthly payments on said note and

trust deed as follows.'' It then specifies particular days in the months running from May, 1918, to February, 1919, when these regular monthly payments were made. Though the plaintiffs were compelled to admit by their own testimony that these allegations were false, we point to them merely to show that the defendants were not apprised by the pleadings of any intention to claim an oral modification of the contract and that this matter was not in issue.

Aside from the matter of pleading, all the evidence upon which this finding is based is found in the testimony of plaintiff D. W. Billings. We quote from the transcript: ''A. I told Hogan I would continue to keep up my interest monthly, and *that I would later on wind up the whole business in a lump sum,* I would not pay him any more on the principal *for the time being.* He told me it was all right. I took him at his word. Q. He said it was all right? A. Yes, sir. Q. That is the conversation as you remember it? A. Yes, as I remember it, yes. Q. That occurred at the time you made your last payment prior to the year's grace? A. Yes. Mr. Anthony: I move this be stricken out on the ground that there is no consideration at all shown for any such statement, and it is incompetent, irrelevant and immaterial on the question. I think all that reference to a year's grace should be stricken out. Mr. Schaffer: We will be able to show the consideration. The Court: Motion denied *on that statement.*'' The same witness testified that he met W. L. Hogan in the month of June, 1918, and paid him the June interest only. Again we quote: ''A. I told Hogan I was on the way to give him his interest, for the month. He says, 'All right,' he says, 'I will take it.' We went across the street to a cigar store, and I paid him the interest, and I had an old receipt from him, and he wrote on the bottom of the receipt, 'Received the interest,' and we shook for a cigar. Q. Have any other conversation with him at that time? A. *Then he asked me if I could pay him a hundred and twenty-five dollars or a hundred and fifty dollars, he would give me ten per cent discount on it.* I told him then I didn't have anything to pay him, when I did pay him I *would wind the whole thing up for a lump sum on the whole thing.*'' No other testimony on this subject was offered. No testimony of any kind was offered to show that the purported ''grace'' was

for one year or for anything more than "the time being." [5] No evidence purporting to show a consideration for this oral agreement was presented and it will be noted that the trial court did not find that any consideration passed. The testimony was inadmissible, of course, as it was an attempt to vary a written contract by parol evidence of an oral contract which was without consideration. Plaintiffs' only answer to this is that they then agreed to make the interest payments monthly, though the contract called for quarterly payments. But the complaint alleged, it was not denied, and the evidence without conflict showed that the payments had been made monthly ever since the execution of the note.

But aside from all this the testimony does not support the finding (as the plaintiffs interpret that finding) that this oral agreement carried forward the due date of all these installments for a period of twelve months. As detailed by this witness this was merely a conditional agreement that if the monthly payments were *waived* for the "time being" Billings would pay them all in a lump sum. This he admits he did not do, and, accordingly, at the end of the so-called period of grace the whole sum of $180 became immediately due.

If a finding has been made on the issue of default as raised by the answer the evidence would have required one favorable to the defendants. This is compelled by a mere mathematical calculation. The complaint alleged, and the trial court found, that when the Hogan note came into the possession of Billings and his associates there was due thereon the sum of $219.98. It was shown by plaintiffs that from March 1, 1919, to October 1, 1919, they credited the defendants with monthly payments on their own note varying from $18.55 to $18.38, principal and interest. When settlement was made on October 29, 1919, Hogan paid Schaffer $218.64 in full payment. Deducting these monthly payments and compounding the interest on the balance monthly it is found that there was then due on the note only $198.16, or $20.48 *less* than Hogan paid. All this is done without regard to the $180 which became due March 10, 1919, if we grant plaintiffs' claim for the year's grace, or which became due monthly after March 10, 1918, if the year's grace is not allowed. The note was taken by Billings

on November 22, 1918. If the oral waiver, or grace, was invalid, eight monthly installments on the Billings note were then due and should have been credited to defendants. In fact the complaint alleged and the court found that these credits began on November 22, 1918, but all the computations credit the defendants from March, 1919, and following. It is evident that if the credits had been given as alleged or if the true amounts due the defendants had been allowed there would have been little or nothing due Billings on the Hogan note and that when he paid Schaffer $218.64 on October 29, 1919, he greatly overpaid what was due.

The plaintiffs seek to justify this transaction by computations which are erroneous from the beginning. In fact their whole case is based on bad arithmetic. It will be recalled that the court found that there was $219.98 due on this usurious note when Billings and his associates bought it on November 22, 1918. In their computations to show a balance due them after the settlement with Hogan on October 29, 1919, the plaintiffs list the amount due on November 22, 1918, as $269.98, or just $50 more than the amount fixed in their complaint and in the finding. They now complain of this finding and insist that it is not supported by the evidence. But they are certainly bound by their pleading and, as they have not appealed, they are also bound by the finding. This is the real basis of their error in computation on the Hogan note, but they have added to this error by computing the compound interest twice a month and in this way have been able to show that defendants were still in arrears when the settlement was made. As the evidence indisputably demonstrates that Hogan overpaid on his note and that the plaintiffs were then and for more than a year prior thereto had been in default the defendants were entitled to a finding to that effect.

This brings us to a consideration of the specific assignments of fraud found in the complaint. [6] 1. The declaration of plaintiffs' default. As the facts clearly demonstrate that they were in default and that they ignored the frequent demands for payment there was no fraud on defendants' part in merely declaring the default in order to bring about a foreclosure sale. 2 and 3. The publication of notice of sale and the sale to the beneficiary. The publication was in strict accord with the statute and the contract

and the beneficiary was a lawful purchaser under the contract. There was no fraud in either of these acts. [7] 4. The sale for an inadequate price. The beneficiary as the only bidder at the sale was not bound to bid more than he was willing to pay. Mere inadequacy of price is insufficient in equity to set aside a sale unless accompanied by acts of fraud. (*Odell* v. *Cox*, 151 Cal. 70 [90 Pac. 194]; *Sargent* v. *Shumaker*, 193 Cal. 122, 129 [223 Pac. 464].) [8] 5. The sale to a third party. Though this was manifestly done to hamper the plaintiffs in their attack upon the sale, it cannot enter into the question of the validity of the original sale. If the facts at and prior to the sale were not fraudulent the plaintiffs cannot complain about the purchaser's subsequent conveyance of the property. [9] 6. The substitution of trustees. The contract authorized the substitution at the request of the beneficiary and there is neither allegation nor proof that the substitution was fraudulent or that it caused plaintiffs any damage. These are all the acts pleaded as contributory to the "conspiracy" to defraud the plaintiffs. Suggestions are made in the plaintiff's brief that Hogan led them to believe that their payments on the original note were complete and that they were not in default. The matter was not pleaded and all the evidence is without conflict to the contrary. [10] It is also argued that the plaintiffs should have been given personal notice of the sale. But such notice was not necessary and the failure to give it is not actionable. (*Sargent* v. *Shumaker*, 193 Cal. 122, 130 [223 Pac. 464]; *Baldwin* v. *Brown*, 193 Cal. 345, 353 [224 Pac. 462].)

Judgment reversed.

Sturtevant, J., and Langdon, P. J., concurred.

A petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 26, 1925.