[Civ. No. 10403.   Second Appellate District, Division Two.—November 7, 1935.]

MARTHA E. MELVIN et al., Appellants, v. MORTGAGE GUARANTEE COMPANY (a Corporation), Respondent.

Ivan Miller for Appellants.

O'Melveny, Tuller & Myers, J. R. Girling and Marshall Taylor for Respondent.

CRAIL, P. J.—This is an action in damages for fraud and deceit under section 1572 of the Civil Code. The appeal is from a judgment in favor of defendant. Plaintiff Melvin was the owner of a house and lot against which she executed a trust deed in favor of defendant to secure the payment of a promissory note in the sum of $7,500. Later she conveyed the property to plaintiffs Cubberley, subject to the trust deed, for the purpose of securing the payment of $5,000. Thereafter default was made in the payment of principal and interest on the defendant's note and trust deed, and the property was sold at trustee's sale to the defendant for $5,000, although the amount due at the time was $8,526.25. Defendant thereafter sold the property for $10,250. The contention of the plaintiffs in the trial court was that at a time prior to the foreclosure sale, they offered to pay the defendant $225 to apply on the indebtedness due the defendant, and the defendant promised and agreed to and with the plaintiffs that, in consideration of the plaintiffs' forbearing to pursue other means of refinancing then in progress and permitting defendant to foreclose the trust deed, the defendant would purchase the property at the trustee's foreclosure sale and re-

sell the same to appellants for the amount of the indebtedness then due to the defendant, plus interest and expenses of foreclosure; and that the plaintiffs believing and relying upon the said representations abandoned steps then being taken to remove a certain cloud from the property and to refinance and pay off the indebtedness against the property, which objects the plaintiffs were then able to accomplish and which, but for defendant's promise and representations as aforesaid and the plaintiffs' reliance thereon, plaintiffs would have accomplished; that thereafter the plaintiffs presented themselves at the office of the defendant and informed defendant of their readiness and ability to proceed with the repurchase of the property, whereupon the defendant refused to sell the property to the plaintiffs in accordance with said representations and promises, all to plaintiffs' damage.

The first contention of the plaintiffs on appeal is that the findings of fact are contrary to the evidence. In behalf of this point the plaintiffs attempt to try the case *de novo* in this court and content themselves with setting out the evidence in favor of their allegations. Nowhere do they attempt to set out *all* the evidence tending to sustain the findings. This court is not a fact-finder and is not a weigher of evidence. When such a question is raised it is our duty to examine the record to see if there is any substantial evidence to support the findings of the trial court, and if there is such evidence the examination ceases. (2 Cal. Jur. 918.) It is sufficient to say that there is substantial evidence to support the findings of the trial court.

The plaintiffs also contend that the trial court should have permitted the plaintiffs to introduce evidence of the usual and customary incidents of the financing and refinancing of obligations in connection with the purchase of real property, but that it sustained the objections of respondent to this *line* of questioning. The only illustration which the plaintiffs give us for review is the following question: "Q. Now, then, speaking of deals, when one of your mortgage debtors refinances his property through another mortgage or finance company, do you [customarily] require, before taking any steps in the deal, that your debtor deliver the cash to you? Mr. Girling: I will object to that as immaterial what may transpire in other transactions that may involve other property and other conditions. . . . The Court: Objection sus-

tained. You may elicit the facts in this particular case, but what was done in other cases would not be binding upon the Court.'' It will first be observed that the question was not asked as a question regarding custom but merely with regard to what the *defendant* customarily did. If it were a question calling for the opinion of a witness in regard to a special custom in business, it had not yet been established that the witness was qualified to testify regarding the matter, and finally it must be remembered that the court found that the defendant did not enter into the alleged agreement nor make the false representations relative to a refinancing operation.

Accordingly any evidence bearing upon the supposed custom and usage among mortgage and finance companies as to refinancing would now be immaterial. No reversal would be granted under the circumstances if the ruling had been erroneous.

The plaintiffs next contend that where performance by the debtor contemplates the cooperation of, and concert of action by, the creditor, and where before performance by the debtor is due the creditor refuses to accept performance, such refusal excuses performance by the debtor and excuses absence of ability upon the part of the debtor to perform. This contention is answered by what we have already said, i. e., that the court found against the plaintiffs on the alleged fraud and the alleged contract. The same may be said with regard to the contention that the trial court should have taken judicial notice of the usual and customary incidents of the financing and refinancing of obligations in connection with the purchase of real property.

The plaintiffs' final contention is that ''Where (a) the beneficiary is the purchaser at the trustee's sale, and (b) the price paid is greatly disproportionate to the actual value of the property, very slight evidence of unfairness or irregularity is sufficient to establish fraud'', citing the case of *Winbigler* v. *Sherman,* 175 Cal. 270 [165 Pac. 943], and similar cases. Such is not the rule for an appellate court. It is our duty as heretofore stated to examine the record to see if there is any substantial evidence to support the findings, and if there is such evidence the examination ceases.

Judgment affirmed.

Wood, J., and McComb, J., *pro tem.,* concurred.