[L. A. No. 7123.  In Bank.—March 12, 1924.]

## MARGARET L. BALDWIN, Appellant, v. D. L. BROWN et al., Respondents.

[1] DEEDS OF TRUST—INADEQUACY OF PRICE—EFFECT UPON SALE.—
Mere inadequacy of price, however gross, is not sufficient, stand-
ing alone, to furnish a ground for setting aside a sale of real
property made under a deed of trust.

[2] ID.—ATTEMPT TO SET ASIDE SALE—INSUFFICIENCY OF GROUNDS.—
Where real property subject to a deed of trust given to secure a
promissory note, which note was signed by both husband and
wife as joint and several makers, is assigned to the husband as
his separate property by a divorce decree, a subsequent sale under
the deed of trust to the beneficiary at an inadequate price, can-
not be set aside by the wife upon the grounds that "when the
property involved was subsequently assigned to her husband she
became merely a surety for the payment of the debt"; that "if
the sale is not disturbed the plaintiff will be made to pay the
deficiency and thus discharge a debt which she does not owe";
and that "the property was purchased for only one-fifth of the
indebtedness and being purchased by the defendant . . . this
alone was a badge of fraud."

[3] ID.—KNOWLEDGE OF VALUE OF PROPERTY—EFFECT UPON INADE-
QUACY OF PRICE.—The fact that the beneficiary under such deed
of trust was the purchaser at said sale and had cause to know
the actual value of the property added no modicum of weight to
the fact of inadequacy of price bid for the property.

[4] ID.—NEWSPAPERS — JUDICIAL DECLARATION — EVIDENCE. — A prior
judicial declaration that a newspaper was one of general circula-
tion, while it would not perhaps be binding upon or conclusive of
the fact against those who had not been parties to such judicial
proceeding, would still be a circumstance supporting the fact that
the publication was a newspaper and was such a newspaper
within the intent of a trust deed, which provided that in the
event of default, the trustee "shall first advertise the time and
place of such sale with a description of the property to be sold,
at least once a week for three successive weeks in some news-
paper published in the county in which any portion of the lands
to be sold are situated."

[5] ID. — NOTICE OF SALE — SUFFICIENCY OF PUBLICATION AS NEWS-
PAPER.—The fact that a publication judicially declared to be a

5. What constitutes newspaper, notes, 16 **Ann. Cas.** 417; Ann.
Cas. 1913D, 879.

newspaper of general circulation, whose chief purpose was the giving of notice by publication to those classes of persons most immediately interested therein of court proceedings, of real estate transactions and of probate and execution sales, and which contained matters of general interest usually found in newspapers, such as "want ads" and a limited amount of current news items, had a small circulation, amounting to only about 180 issues daily in a city of 16,000 inhabitants, would not of itself, suffice to exclude it from the designation of a "newspaper," nor of such a newspaper as might properly be the medium for such publicity of the notice of sale as the trust deed required.

APPEAL from a judgment of the Superior Court of Kern County. J. W. Mahon, Judge. Affirmed.

The facts are stated in the opinion of the court.

Kaye & Siemon, W. W. Kaye, Alfred Siemon and L. E. Nathan for Appellant.

J. W. Wiley and Wiley & Harvey for Respondents.

RICHARDS, J.—This is an appeal from a judgment in favor of the defendants in an action commenced by the plaintiff to set aside a sale of real estate made under the power granted to the trustee in a trust deed. The facts out of which this litigation arose are practically undisputed and may be briefly summarized as follows:

On and prior to the twenty-fifth day of March, 1916, F. H. Baldwin and Margaret L. Baldwin were husband and wife, residing at Bakersfield, Kern County, California. On said last-named date F. H. Baldwin borrowed the sum of $2,000 from D. L. Brown, the defendant herein, and thereupon executed and delivered to said Brown his promissory note for said sum of money, signed by himself and his wife as comakers thereof. The plaintiff herein alleged in her complaint that she signed said note only as an accommodation maker thereof, but this the defendant Brown in his verified answer denies, and alleges that the said plaintiff and her said husband signed said note as joint and several makers thereof and not otherwise. The trial court found in favor of the defendant Brown upon this issue. At the time of the execution of said note, and to secure the payment of the same, F. H. Baldwin and his wife signed and executed

their joint deed of trust upon the premises involved in this litigation, which constituted at the time a portion of the community property of the makers of said trust deed, and in which deed of trust the defendant Security Trust Company, a corporation, doing business in the city of Bakersfield, was named as trustee. On August 2, 1917, an action for divorce was instituted by the plaintiff herein against her husband F. H. Baldwin in the city and county of San Francisco, which action was thereafter transferred to the county of Kern for trial, and was there tried, with the result that on or about September 22, 1919, findings were filed and a judgment given, made, and entered, awarding the plaintiff an interlocutory decree of divorce and undertaking to divide and assign to the respective parties in severalty the property which had theretofore been *their* community property. In the course of this division the trial court set apart to the defendant F. H. Baldwin the foregoing property covered by said trust deed as his sole and separate estate, subject to said trust deed and the indebtedness secured thereby, the court, however, making no other direction as to which of said parties should pay or should be relieved from payment of said indebtedness. The court, in making said interlocutory decree, also assigned certain other property, situate in the city of Bakersfield and which had theretofore been community property, to the plaintiff in said divorce action as her sole and separate estate. F. H. Baldwin defaulted in the payment of said promissory note and thereafter and on or about October 1, 1919, the defendant Brown required and directed the Security Trust Company, as the trustee named in said deed of trust, to sell the said real estate in order to satisfy said indebtedness secured thereby. By the terms of said deed of trust it was provided that in the event of default in the payment of the promissory note secured thereby and of a direction to the said trustee to sell the premises described therein the said trustee "shall first advertise the time and place of such sale with a description of the property to be sold, at least once a week for three successive weeks in some newspaper published in the county in which any portion of the lands to be sold are situated." Pursuant to this direction the trustee proceeded to advertise the sale of said property and selected as the medium for such advertisement a small newspaper pub-

lished daily in the city of Bakersfield and called "The Daily Report." This newspaper had been in existence for a number of years prior thereto in the city of Bakersfield and some years prior to the particular publication about to be made therein had caused itself to be adjudged to be a newspaper of general circulation in accordance with the terms of the statute permitting the status of newspapers to be thus established. Its circulation was, however, very small, amounting to only about 180 copies daily in a city of approximately 16,000 population. It was, however, devoted chiefly and especially to the publication of court proceedings, legal notices, notices of sale of real estate under probate, foreclosure, and trust deed proceedings, and its subscribers were chiefly among attorneys, real estate dealers and others who would be more particularly interested in such proceedings and in such sales. The publication of this particular sale was made in said newspaper in strict accordance with the provisions of said trust deed as to the length and frequency of said publication and as to the time and place of said sale. No other attempt was made, either by the creditor or the trustee, to notify the parties to said trust deed or to the obligation secured thereby or to inform the general public as to the fact, time, and place of said sale. At the time and place appointed by said publication the sale of the property occurred. D. L. Brown, the creditor and the defendant herein, was the only bidder at said sale. He bid the sum of $480 for the whole of said property and it was sold to him by the trustee for said sum, although according to the findings of the trial court the property at the time of said sale was of the value of $4,800. Thereafter, and on November 6, 1919, the trustee conducting said sale and in pursuance thereof made, executed and delivered to the said D. L. Brown, as the successful bidder thereat, a deed of conveyance of the whole of said property sufficient in form to convey title to the same. The plaintiff alleged that she had no knowledge whatever of said sale until on or about January 16, 1920, at which time she learned of the same through the service upon her of a writ of attachment in an action which the defendant herein, D. L. Brown, had commenced against her to recover the amount of the deficiency still due upon said promissory note, approximately $2,400; whereupon and shortly there-

after she had an interview with said Brown in which she requested that he convey the premises to her upon payment by her of the entire amount of said note with interest and counsel fees, together with the costs and expenses of said sale. This Brown refused to do; whereupon the plaintiff commenced the present action to set aside said sale. The trial court found substantially the foregoing facts and as a conclusion of law therefrom found and decided that the plaintiff was not entitled to the relief prayed for in her complaint and accordingly gave its judgment in favor of the defendant and for his costs. This is an appeal from such judgment.

The only contention which the appellant urges upon this appeal is her claim that the sale of the premises in question by the trustee to the defendant herein was for a price which was grossly inadequate and that such gross inadequacy of price was accompanied by certain inequitable circumstances which would have warranted the interference of a court of equity, and which the trial court should have considered of sufficient weight to have justified it in setting aside said sale; and that its failure so to do was reversible error. [1] In making this contention the appellant concedes that mere inadequacy of price, however gross, would not be sufficient, standing alone, to furnish a ground for setting aside said sale and in so conceding concurs in the like conclusion expressed by this court in the cases to be hereinafter commented upon. The appellant, however, urges six sets of circumstances alleged to be disclosed by the record before us which, taken in connection with the circumstances of gross inadequacy of price, would have sufficed to compel a setting aside of said sale. [2] These are, first, "that the plaintiff was merely an accommodation maker of the promissory note." As to this contention the findings of the trial court are against the appellant and are sustained by the evidence in the case. Second, that "when the property involved was subsequently assigned to her husband she became merely a surety for the payment of the debt." This contention, however, falls with the former one, since her relation to the creditor as a joint and several maker of the note could not be changed without his consent by the result of a divorce proceeding and division of properties between herself and her husband to which the creditor was not a

party. Third, "if the sale is not disturbed the plaintiff
will be made to pay the deficiency and thus discharge a
debt which she does not owe." This is a *non sequitur:*
She always owed the debt and the fact that she was obliged
to pay the deficiency and thus discharge her obligation
would not of itself be an inequitable circumstance. Fourth,
"the property was purchased for only one-fifth of the in-
debtedness and being purchased by the defendant Brown
this alone was a badge of fraud, he having loaned $2,000
on the credit of this property alone." [3] This is only
another way of stating that the purchase price was grossly
inadequate, which, as she concedes, is not of itself sufficient
to justify setting aside said sale, the only added circum-
stances in this connection being that the creditor was the
purchaser at said sale and had cause to know the actual
value of said property and hence the gross inadequacy of
his bid thereon. But unless the appellant could show by
either reason or authority that the creditor must be held to
a different rule of duty than that applicable to other bid-
ders for property offered at public sale, this circumstance
can be of no avail to the appellant since it adds no modicum
of weight to the fact of inadequacy of price bid for the
property at such sale. No sound reasons and no authority
whatever are cited to sustain the appellant's conclusion
in this regard. Fifth, "the notice of sale was insufficient,
not being published in a newspaper but only in an obscure
publication." Sixth, "the plaintiff had no actual knowl-
edge of the sale and her lack of knowledge was excusable."
These last two contentions are in a sense the complement
of each other, since, if the publication was inadequate, the
plaintiff's lack of knowledge, either actual or presumptive,
would have been sufficient to justify her assault upon said
sale. But if, on the other hand, the notice of sale was
sufficiently published it would impart to the plaintiff con-
structive notice of such proposed sale by which she would
be bound by virtue of her covenants in the trust deed; and
if so, her actual knowledge, or the want of it, would be an
immaterial factor in the case. We are, therefore, driven
to the sole and only point in the appellant's several con-
tentions: Was the notice of sale insufficient? Upon this
point the trial court found:

"That the notice of said sale was printed and published for the time required in said deed of trust, in the Daily Report, a newspaper printed and published in the said County of Kern, State of California, for the time prescribed in said deed of trust.

"That said Daily Report was a newspaper printed and published in the County of Kern, State of California, and had been such newspaper so printed and published, for more than one year prior thereto.

"That said Daily Report was, on the 18th day of August, 1913, by the Superior Court of the County of Kern, State of California, adjudged to be a newspaper of general circulation by a judgment of said court."

As to the first two of the foregoing findings it must be conceded that they hold that the notice in question conforms fully as to the place of its publication with the requirements of the deed of trust, that the notice of sale thereunder shall be published "in some newspaper published in the county in which any portion of the lands to be sold are situated." [4] The last of said findings to the effect that the publication referred to had been theretofore judicially declared to be a newspaper of general circulation, while it would not perhaps be binding upon the plaintiff or conclusive of the fact as against those who had not been parties to such judicial proceeding, would still be a circumstance supporting the other findings of the court to the effect that the publication in question was a newspaper and was such a newspaper within the intent of the deed of trust as might furnish a sufficient medium for the publication of the notice required by its terms. [5] The publication had, it is true, a very small circulation, but it appears from the record, and particularly from the exhibit of the files of said publication, that it met the requirements of a newspaper and that it was such a daily publication as is not infrequently maintained in cities of considerable population for the chief purpose of giving notice by publication to those classes of persons most immediately interested therein of court proceedings, of real estate transactions and of probate and execution sales. Interspersed with these notices were to be found certain other matters of general interest usually found in newspapers; such as "want ads" and a limited amount of current news items. The publication, as appears

upon its face, was in its 36th volume, and hence must have
been existent in the place of its publication for a goodly
number of years. The mere fact that its circulation was
small, amounting to only about 180 issues daily in a city of
16,000 inhabitants, would not of itself, in our opinion, suf-
fice to exclude it from the designation of a "newspaper,"
nor of such a newspaper as might properly be the medium
for such publicity of the notice of sale as the trust deed re-
quired. The cases are not a few holding similar publica-
tions specially devoted to the giving of legal notices to be
"newspapers" within the legal requirements of statutes
relative to the giving of notices by publication and of the
provisions of trust deeds to argue convincingly against any
holding to the contrary, since to so hold would be to work
havoc with legal proceedings and land titles which have
long been dependent upon the sufficiency of publications
of the identical character of that involved in the instant
case. (*Kerr* v. *Hitt,* 75 Ill. 51; *Kellogg* v. Carrico, 47 Mo.
157; *Benkendorf* v. *Vincenz,* 52 Mo. 441; *Turney* v. *Blom-
strom,* 62 Neb. 616 [87 N. W. 339]; *Lynch* v. *Durfee,* 101
Mich. 171 [45 Am. St. Rep. 404, 24 L. R. A. 793, 59 N. W.
409]; *Hanscom* v. *Meyer,* 60 Neb. 68 [83 Am. St. Rep. 507,
48 L. R. A. 409, 82 N. W. 114].) This being so we are
constrained to hold that the publication of the notice of
sale in question was sufficiently made to satisfy the require-
ments of the deed of trust under the terms of which the
sale of the premises in question to the defendant Brown
was conducted.

This brings us finally to a consideration of the decisions
of this court upon which the respective parties hereto rely.
They are chiefly *Odell* v. *Cox,* 151 Cal. 70 [90 Pac. 194];
*Winbigler* v. *Sherman,* 175 Cal. 270 [165 Pac. 943]; *Rauer*
v. *Hertweck,* 175 Cal. 278 [165 Pac. 946]; and *Bock* v.
*Losekamp,* 179 Cal. 674 [179 Pac. 516]. It will not be
necessary, however, to review these cases in detail since
they are all considered, compared and the proper rule to be
educed therefrom stated, in the case of *Sargent* v. *Shu-
maker, ante,* p. 122 [223 Pac. 464], just decided by this
court, and wherein it is declared that, as the foregoing
cases hold, the mere inadequacy in price, however gross in
the sum bid for property at a public sale, will not in itself
be sufficient ground for setting aside such sale if otherwise

legally made; but that in addition to proof of such gross inadequacy in the price bid at such sale there must be proof of some element of fraud, unfairness, or oppression on the part of the creditor bidding in the property thereat before the court will be justified in depriving the purchaser of his legal advantage. The court further holds that where the price thus bid for the property is greatly disproportionate to its actual value, very slight evidence of unfairness or irregularity will suffice to authorize the relief sought. In that case this court considered some of the very alleged irregularities which the appellant urges as existent in the instant case and also certain others not here present, and presenting an even stronger case than the present one, for relief, but holds that none of these are sufficient to constitute such a legal showing of fraud, unfairness, or oppression on the part of the purchasing creditor as would suffice to justify this court in avoiding the sale. In the instant case the evidence wholly fails to show any action or inaction on the part of the defendant which would bring his conduct with respect to his trust deed and the sale thereunder within the limits of the rule above stated. He simply stood upon his rights and duties as a creditor of the parties to his promissory note and the trust deed securing the same, and while it is true he gained a hard advantage over the plaintiff herein in so doing, it has not been shown that it was not an advantage to which he was entitled under the strict terms of the plaintiff's obligation. This being so, under the authority of the cases above cited, and especially of the case of *Sargent* v. *Shumaker, supra,* we are constrained to uphold the findings and judgment of the trial court.

Judgment affirmed.

Myers, J., Waste, J., Lennon, J., Seawell, J., Lawlor, J., and Wilbur, C. J., concurred.

Rehearing denied.

All the Justices concurred.