GREENBERG *v.* KAPLAN.

1. JUDICIAL SALES—INADEQUATE PRICE—CONSIDERATIONS FOR SET-
TING ASIDE SALE.

> While mere inadequacy of price is, alone, generally an insuffi-
> cient reason for setting aside a judicial sale, such sale may be
> set aside where there is gross inadequacy of price accompanied
> with other circumstances showing fraud, irregularities or un-
> fairness.

2. EXECUTION — SALES — INADEQUATE PRICE — FRAUD — BREACH OF
ORAL AGREEMENT.

> Sale of $9,000 vendor interest in lot to purchasers at execution
> sale, of which vendor did not have actual notice, for sum of
> $377.40 *held,* such a grossly inadequate price as to require
> that sale be set aside where coupled with unmistakable signs
> of fraud and unfairness, including breach of oral agreement
> with attorney for vendor that judgment would be collected by
> garnishment of sums due him from purchaser.

3. STIPULATIONS—COURT RULES—EQUITY.

> Whether or not court rule requiring that agreements between
> parties to a suit shall be binding only when made in open court
> or are in writing applies to agreements between counsel made
> after case has gone to judgment, a court of equity has power
> to relieve a party who has, in good faith, relied upon and
> acted on an alleged parol agreement between counsel (Court
> Rule No. 11 [1933]).

4. PARTNERSHIP— ACCOUNTING— FRAUD— BURDEN OF PROOF— EVI-
DENCE.

> In suit for accounting between partners, assignees of purchaser's
> interest in land contract, plaintiff *held,* to have failed to sus-
> tain burden of proof that defendant fraudulently refrained
> from contributing his half of the purchase price.

* Continued from Vol, 276.

5. APPEAL AND ERROR—SETTING ASIDE JUDICIAL SALES—CONDITION PRECEDENT.

> In suit for accounting between partners, assignees of purchaser's interest in land contract, in which vendor intervened to set aside execution sale in partial satisfaction of judgment against him for real estate brokers' commission, payment of entire judgment, interest and court costs is required as condition precedent for setting it aside after period of redemption therefrom had expired.

6. VENDOR AND PURCHASER—INJUNCTION—FORFEITURE—EXECUTION SALE.

> In suit for accounting between partners, assignees of purchaser's interest under land contract, plaintiff *held*, entitled to injunction against forfeiture by dummy purchaser of vendor's interest at execution sale, conditionally set aside for grossly inadequate price and fraud.

Appeal from Wayne; Houghton (Samuel G.), J. Submitted June 12, 1936. (Docket No. 93, Calendar No. 39,027.) Decided September 2, 1936. Rehearing denied October 16, 1936.

Bill by Harry M. Greenberg against Nathan N. Kaplan and Leo Davidson, for an injunction, an accounting and other relief. Fred J. Baier intervened as party defendant and filed a cross-bill against defendants Kaplan and Davidson and plaintiff to set aside a sheriff's sale and for other relief. Mary Baier substituted for Fred J. Baier. From decree rendered, intervener appeals and plaintiff cross-appeals. Remanded for entry of modified decree.

*Samuel S. Greenberg,* for plaintiff.

*Joslyn, Joslyn & Joslyn,* for defendant Davidson.

*Wm. Rolston Brown,* for defendant Kaplan.

*Wm. Henry Gallagher,* for intervener.

BUTZEL, J.   In June of 1925, Fred J. Baier entered into an agreement to sell a lot situated at the corner of Mack and Lenox avenues, Detroit, on land contract to David Sloan.  Upon Baier's refusal to execute a land contract in accordance with the agreement, a suit was brought and a decree was entered providing that a land contract dated July 15, 1925, be executed and that Sloan have possession of the premises.  Because of a condemnation award made to Baier by the city of Detroit for partial condemnation of the premises, the amount due Baier was reduced and decreed by the court to be $8,937 with interest, payments on the contract to begin December 15, 1926.  Before this first payment became due, Sloan sold his vendee's interest in the land contract at a price stated to be $5,000 to Harry M. Greenberg, plaintiff, and Nathan N. Kaplan, the main defendant, in the present case. Greenberg contributed $2,500, while Kaplan claims that he paid a like amount.  Kaplan, a young attorney, was a nephew by marriage of Greenberg.  He was employed by a law firm during a portion of the period during which the events leading up to the present litigation occurred.

In December of 1926, Greenberg and Kaplan sent by registered mail an assignment of the contract with a $100 check as the first payment on the contract to Baier.  Baier refused the letter, claiming, at the trial of the instant suit, that he was under the impression that an appeal was pending from the decree of specific performance.  The impression was false for the appeal had been dismissed over three months previous to the time payment was proffered.

Jacob Shevitz, an uncle of Kaplan by marriage, and Robert Bartlett demanded a real estate commission from Baier for selling the property to Sloan. Baier refused to pay the commission to them and

thereupon Kaplan brought suit on March 18, 1927, and recovered a judgment of $777.27. Bartlett testified that he had never authorized the suit, although this is denied by Kaplan. Baier was represented in the two suits by Elmer Mulford, then an attorney in good standing as far as this record shows. Although the suit for the commission was brought in the names of the attorneys by whom Kaplan was employed, the fee in the case went solely to Kaplan. There cannot be any doubt but that he was in charge of the litigation. At the time the judgment was rendered against Baier, Kaplan and Greenberg owed him a larger sum on the land contract than the amount of the judgment. Kaplan, who also represented Greenberg at the time, either had this money in his possession or access to it. A writ of garnishment before judgment was issued at the time suit was commenced, Kaplan, on behalf of Shevitz and Bartlett, garnisheeing himself and Greenberg; Kaplan, however, took no further proceedings under the garnishment. After the judgment was rendered against Baier, Kaplan told Mulford, according to the latter's testimony, that he would satisfy it through garnishment proceedings. Kaplan, who denies he made the latter statement, caused a levy to be made and the property to be sold on execution. On the day that judgment against Baier was rendered, Kaplan admits there was sufficient due Baier from Kaplan and Greenberg on the land contract to more than satisfy the judgment. On September 28, 1927, the date of the sale, $2,400 was past due for payments under the contract.

Obviously the printed notice of the sale, as advertised in a legal publication, would not reach interested parties unless they happened to see the advertisement. Both Baier and his attorney Mulford claim that they had no actual knowledge of the execution

until after the period of redemption and shortly prior to the instant suit. The property was bid in by one Sol August, who not only shared office space with Kaplan, but was his brother-in-law, in the name of Leo Davidson, a client and friend of Kaplan, for $350. The bid was raised $27.40 so as to cover the costs involved. Although Kaplan was present at the sale and had an opportunity to buy up an equity on which he and Greenberg owed approximately $9,000 by putting in a bid in excess of August's $377.40 bid, Kaplan made no efforts in that direction. When asked on the trial why he did not bid, he replied that the partnership did not have the money; however, it is undisputed that he never revealed the opportunity to his partner, Greenberg. $350 was sent by the sheriff to Kaplan's employers and in accordance with Kaplan's statement, he received $200 of this amount for his services and $150 was sent to Shevitz, Bartlett not receiving anything though he was one of the plaintiffs and owners of the judgment. The testimony is quite convincing that Davidson was a dummy. On the witness stand, he did not even know where the property was located. He had no written evidence of any kind of his alleged ownership. He furnished no part of the consideration. August testified that he bought the property in Davidson's name for himself and Davidson, but his testimony is not reconcilable with the other testimony in the case.

A few days after the execution sale, Greenberg and Kaplan began the erection of a gasoline station which was to cost $6,500 on the premises. On October 8, 1927, Baier filed a bill to enjoin these acts and was granted a temporary injunction restraining the erection of the station. William Shortell, the Reid Electric Company and the Texaco Company were made parties to the suit, but not Kaplan and

Greenberg. On October 17, 1927, the temporary injunction was dissolved, the court ordering that Kaplan turn over to Mulford the copy of the assignment from Sloan to Greenberg and Kaplan and the check for $100 dated December, 1926, both of which had been refused by Baier when sent to him by registered mail earlier in the year. Although at the time of this litigation, execution and sale of Baier's interest in the property had been had, Kaplan admits that no mention was made of this fact. That Baier did not know that he had been divested of his interest in the property is further shown by the fact that he paid the 1927 taxes on the property as late as August 26, 1929, almost two years after the execution sale.

Meantime Kaplan and Greenberg had leased the station, but payments were neither made to Baier nor to Leo Davidson, who, it was represented, owned the fee and the accompanying vendor's interest in the property. No demand for payments was made by August; neither was there any made by Davidson until shortly before the beginning of the present suit which was prompted by Davidson giving Kaplan and Greenberg notice that he would forfeit the contract. It was at about that time that Greenberg first learned of the sale to Davidson. Greenberg testified that Kaplan had previously asked him not to pay taxes on the property so that they might acquire a tax title in the name of a third party and thus divest Baier of all interest. Greenberg states that he refused to do this. In his bill of complaint, Greenberg alleges that he and Kaplan purchased the property as copartners; that Kaplan was the real purchaser at the execution sale and that Davidson was only a dummy; that Kaplan did not contribute any amount towards the purchase of the property; that $5,000

was not paid for the equity in the property, but only the sum of $2,500 that Greenberg furnished; that he had advanced large sums for payment of taxes; that Kaplan had refused to contribute his share; that he trusted Kaplan as his nephew and attorney and as copartner to look after his interest, but that Kaplan, with the assistance of Davidson, was attempting to defraud him of his interest in the property acquired solely with his own funds. He asked for an injunction, an accounting, etc. Kaplan in his answer denied the claims and alleged that he had paid his full interest in the property; that he owed no duty to Greenberg; that he only became a tenant in common with him and denied that Davidson was only a dummy acting in Kaplan's interest.

By leave of the court Baier was permitted to intervene and in his answer and cross-bill, he claimed that Kaplan and Davidson were seeking to defraud him of his rights in the property. Upon Baier's death, Millie F. Baier, as his administratrix, was substituted as party defendant and cross-plaintiff by order of the court. After a long, protracted hearing, taken up intermittently during a period of years, the trial judge made findings in which he held that the execution sale was void and a scheme to defraud Baier; that Kaplan had neither furnished the $2,500 to purchase Sloan's interest nor paid his share of other expenditures. On motion to amend his findings, the trial judge changed them entirely and found in Kaplan's and Davidson's favor. Both plaintiff and cross-plaintiff have appealed.

At the time of the levy, Baier's interest was approximately $9,000. This interest was sold for $377.40. Appellee, however, contends that mere inadequacy of price as a rule is not sufficient to set aside a judicial sale. There is much law to this

effect, but when such gross inadequacy is accompanied with any other circumstances showing fraud, irregularities or unfairness, the sale may be set aside. *Campau* v. *Godfrey,* 18 Mich. 27 (100 Am. Dec. 133); *Gilbert* v. *Haire,* 43 Mich. 283; *Fix* v. *Loranger,* 50 Mich. 199; *Carlisle* v. *Dunlap,* 203 Mich. 602. We need not refer to the cases outside of Michigan except to one where the facts were quite similar. In the case of *Lovejoy* v. *Americus,* 111 Wash. 571 (191 Pac. 790), an execution was levied and sale was had without any actual notice to the debtor, the creditor stood by permitting the debtor to pay taxes and special assessments and allowed debtor to expend considerable sums of money in improving the buildings. The court held:

"The judgment, with interest and costs, could have been satisfied, prior to the execution, by *garnishment* proceedings against the tenant of respondents for less than five months' rental, while during the period of redemption from the sheriff's sale the amount of the judgment, interest, and costs, and increased costs, of $87.92, could have been satisfied by less than six months' rental from the same tenant, to which appellants, as purchasers at the sheriff's sale, were entitled under the provisions of Rem. Code, § 602.

"*The obviously studied course of the judgment creditor in refusing or failing to pursue those plain, simple, and adequate ways to collect constitute in part that unfairness which, coupled with the shockingly inadequate price for which they purchased at the execution sale, fully warranted respondents in their appeal to a court of equity for relief.*"

In view of the gross inadequacy of the price coupled with the unmistakable signs of fraud and unfairness in the instant case, we hold that the sale

must be set aside. It is quite significant that no attempt was made to collect the balance of the judgment and that Bartlett, who had an interest in the judgment, was not given any share of the proceeds. Kaplan, as attorney for Shevitz and Bartlett, knew that he had funds either in his possession or largely under his control which by a simple, inexpensive method quickly could have been applied to pay the judgment. Baier's interest in the property of the value of at least $9,000 was bid in for $377.40 in Kaplan's presence by his brother-in-law, in the name of one who has every appearance of being a dummy. Although Kaplan had good reason to believe that Baier did not know of the sale because of Baier's actions in bringing the injunction suit and paying taxes, both after sale had taken place, and although Kaplan had ample opportunity to enlighten Baier, he never did this. Although Kaplan, if he had told his partner Greenberg of the opportunity to rid themselves of an obligation of approximately $9,000 for much less, might have been able to procure enough cash to bid in at the sale, he chose to remain silent and let his brother-in-law buy in under the name of a client and friend of Kaplan. In view of the surrounding circumstances and the actions of the parties, despite the carelessness of Mulford and the attack on his credibility, we believe that an agreement was made between Kaplan and Mulford that garnishment would be resorted to in collecting the Shevitz' judgment against Baier; that, in view of Baier's and Mulford's reasonable reliance upon this agreement, the execution and sale, in contravention of the understanding were fraudulent. It is claimed on behalf of Davidson that irrespective of whether the agreement was made with Mulford or not, it was not binding because not made either in open court

or evidenced by writing subscribed by the party or by his attorney against whom it is alleged. Court Rule No. 11 (1933). Without passing upon whether this rule applies as to agreements between counsel made after a case has gone to judgment, there is undoubted power in a court of equity to relieve a party who has, in good faith, relied upon and acted on an alleged parol agreement between counsel. *C. J. Huebel Co.* v. *MacKinnon,* 186 Mich. 617.

As far as plaintiff's claim that Kaplan did not contribute $2,500 towards the purchase of the property and therefore Kaplan should account to him for one-half of the amount contributed is concerned, the testimony as to whether he paid this amount or did not is absolutely unsatisfactory. The burden to show fraud was upon plaintiff. However, the charge is not substantiated by facts. Kaplan claimed that he made payments by check, note, and transfer of an account payable due from his father-in-law to Sloan. Kaplan claims that the note and check were either lost or destroyed and the father-in-law was not called as a witness. An attempt was made to secure the testimony of Sloan who was sick and the most that could be obtained from him was an affidavit which stated that he had received $5,000 for the purchase of his interest. While this is very indefinite and we feel that Greenberg's claims may be correct, nevertheless he has not sustained the burden of proof so as to justify our holding in his favor on this particular claim.

As a condition to setting aside the sale, however, cross-plaintiff shall pay the full amount of the Bartlett-Shevitz judgment, including interest and court costs within 90 days. *Roubaje* v. *Graszuk,* 244 Mich. 179.

The decree of the lower court is reversed and a new one may be entered in accordance with this opinion. Plaintiff was entitled to an injunction restraining forfeiture by Davidson. Plaintiff and cross-plaintiff will recover costs against defendants Kaplan and Davidson.

NORTH, C. J., and FEAD, WIEST, BUSHNELL, SHARPE, and TOY, JJ., concurred. POTTER, J., did not sit.