[Civ. No. 16175.   Second Dist., Div. Three.   Dec. 1, 1948.]

CHARLES S. DARDEN, Respondent, v. ARTHUR L. REESE et al., Appellants.

Harold B. Pool for Appellants.

Bodkin, Breslin & Luddy, Henry G. Bodkin and Peter E. Giannini for Respondent.

SHINN, P. J.—Action to set aside an execution sale of corporate stock in which the sale was vacated by the judgment and the purchaser of the stock and other defendants appeal from the judgment.

The judgment was based upon findings that the sale was made without the knowledge of plaintiff, the owner of the stock, was knowingly made for a grossly inadequate consideration, that defendant Brown was not a bona fide pur-

chaser of the stock, and findings of other facts from which the court concluded that defendant Reese, the judgment creditor who caused the sale to be made, "was guilty of fraudulent conduct and great unfairness toward the plaintiff herein and the Lakeshore Beach Company," of which he was the secretary. The questions on appeal are whether these findings are supported by the evidence and whether the conduct of Reese furnished legal ground for vacating a sale made for a grossly inadequate price.

The Lakeshore Beach Company, a corporation, had issued 100 shares of its capital stock which was owned as follows: Charles S. Darden, 54 shares; Arthur L. Reese, 36 shares; Mercer Reese, 2 shares; Alonzo Adams, 2 shares; Clarence Jones, 1 share; and the estate of Sally Richardson, 5 shares. Darden was the president of the corporation and exercised a controlling influence in the management of its affairs. Arthur L. Reese was the secretary; Clarence Jones was the vice president, and A. A. Adams assistant secretary. All of these officers had offices in Los Angeles, but for some two years Darden had maintained his actual place of abode on the property at Elsinore. During that period he had received correspondence from Reese and from Harold B. Pool, attorney for Reese, at his Elsinore address, as well as at his Los Angeles address. For more than 20 years the corporation had owned 47 acres of land in the vicinity of Lake Elsinore, in Riverside County, which had been improved with numerous buildings and was operated for recreational purposes. The project had not been a profitable one. There had long been dissension among the stockholders, manifested by the activities of Arthur L. Reese, who had instituted suit in 1939 to dissolve the corporation, had demanded of the directors that they terminate a lease of the property which had been given to Darden, and had instituted suit for a cancellation of the lease, all against the wishes of the other members of the board of directors. By the terms of the lease, which was executed in 1937, Darden had agreed to pay, among other things, all assessments and taxes against the real property of the corporation, and had been in possession, managing the property, pursuant to the lease. He failed to pay the taxes, Reese paid them, made demand upon the corporation that it sue Darden upon his obligation, and when the board of directors refused to institute action the same was instituted by Reese as a stockholder on behalf of the corporation. The purpose of this suit was to force compliance with the terms of the lease or

to obtain a termination thereof, and the corporation was joined as a defendant. Judgment was rendered in favor of Reese for the benefit of the corporation October 11, 1946, in the total sum of $1,666.49; and for $350 as attorney's fees for the services of Harold B. Pool in the action. Execution was issued on October 25, 1946. Written instructions were given by Mr. Pool to the sheriff which directed him to serve notice of the levy on Reese at an address stated in the instructions, and on Darden at 1802 Central Avenue, Los Angeles, which was the local office of the corporation. The sheriff made several trips to the Central Avenue office, could not find Darden, and made service on Reese as secretary. Reese made return to the levy to the effect that Darden owned 54 shares of the capital stock of the corporation. No service was made upon Darden and he did not know of the levy. Thereafter, the sheriff gave notice of sale, mailed a copy thereof to Mr. Pool, as attorney for Reese, and mailed a copy to Darden at 1802 Central Avenue. Darden, who was at Elsinore, did not receive this notice and it was returned to the sheriff by mail some three days after the date of the sale. No one bid at the sale except members of the Reese family and defendant Charles J. Brown, the latter being the highest bidder and the purchaser of the stock for the sum of $1,150. Shortly after the sale the present action was instituted.

The court found that the market value of the 54 shares of stock was approximately $35,000, and that defendant Reese instructed defendant Charles J. Brown to bid the sum of $1,150, knowing that said sum was grossly inadequate. The sale left the judgment against Darden unsatisfied in the sum of $1,133.

Appellants attack the finding as to the value of the stock, claiming that it is not supported by the evidence. We believe it to be amply supported. There was expert testimony as to the value of the land and there was also evidence as to the amount of the obligations of the corporation. This testimony was sufficient to support the findings of value. Additional evidence consisted of the testimony of Darden that the stock was worth $35,000 and testimony by Reese that it was worth between $50 and $100 per share. The amount for which the stock was sold was grossly inadequate. The court also found that defendant Brown was not a bona fide purchaser of the stock but had bought the same for and on behalf of defendant Reese. This finding also has support in the evidence. Brown had been in the amusement business in Venice; he was a

neighbor and friend of defendant Reese and a client of Reese's attorney, Pool. It clearly appears that he was not interested in acquiring the stock for himself, but did so only for what he understood would be the protection of Reese and upon the promise of Reese that the latter would take the stock off his hands. Brown testified also that he had consulted Mr. Pool about the proposed purchase and had been informed by Pool that there would be litigation over the same.

It is conceded by respondent that inadequacy of price alone does not invalidate an execution sale, and the parties are not in substantial disagreement as to the rule which is applicable to actions to set aside such sales. It was stated in *Sargent* v. *Shumaker*, 193 Cal. 122 [223 P. 464], as follows: "Where, however, the price obtained is greatly disproportionate to the actual value, very slight evidence of unfairness or irregularity will suffice to authorize the granting of the relief. (*Rauer* v. *Hertweck*, 175 Cal. 278 [165 P. 946]; *Winbigler* v. *Sherman*, 175 Cal. 270 [165 P. 943]; *Bock* v. *Losekamp*, 179 Cal. 674 [179 P. 516]; *Odell* v. *Cox*, 151 Cal. 70 [90 P. 194].)" (See, also, *Baldwin* v. *Brown*, 193 Cal. 345 [224 P. 462], and *Schuler-Knox Co.* v. *Smith*, 62 Cal. App.2d 86 [144 P.2d 47].) The case of *Mortimer* v. *Young*, 53 Cal.App.2d 317 [127 P.2d 950], relied upon by appellant, does not depart from the rule, nor criticize it. The rule was applied but the case was decided upon wholly different facts. The judgment setting aside the execution sale was reversed for the reason that "there was no evidence at all of unfairness or irregularity."

The question here is whether under the facts established at the trial the case is one for relief under the rule above stated. The finding of fraudulent conduct and great unfairness on the part of Reese was based upon the findings already mentioned and evidence of the following facts and consequent inferences: (1) That Reese intentionally withheld information of the levy of execution from Darden, Jones and Adams, for the purpose and with the intention of acquiring the stock for himself at a price fixed by him, and without regard to its value; (2) that he gave instructions and directions to Brown with respect to bidding at the sale with the same purpose and intention. The findings upon these points have clear support in the evidence. It is significant, as bearing upon the motives of Reese in withholding information as to the levy, that Jones, the vice president, and Adams, the assistant secretary, were aligned with Darden in the

litigation that had been instituted by Reese to bring about a dissolution of the corporation and a cancellation of the lease to Darden.

Reese held the judgment against Darden as trusteee for the corporation and his attorney Pool. It was his duty as such trustee and as secretary to use his best efforts to collect the judgment in full by execution sale of the stock. That he intentionally disregarded that duty can scarcely be disputed. The trier of facts could have inferred, with good reason, that when Darden's address was given in the instructions to the sheriff as 1802 Central Avenue, it was the expectation of the attorney for Reese that he would not be found at that address. The fact that Darden had been residing at Elsinore, and operating the property there, was known to both Reese and his attorney. Although Jones, as vice president, and Adams, as assistant secretary, were qualified to receive notice of the levy (Code Civ. Proc., § 688), the name and address of neither was stated in the instructions, with the result that Reese alone would receive notice of the levy if Darden should not be found at the Central Avenue address. The court found that Herbert V. Walker, then counsel for Darden, had requested the attorney for Reese, on October 15, 1946, to advise Jones, who was an attorney, of all matters affecting plaintiff herein, in the action of *Reese* v. *Darden*. Jones was not advised of the levy of the execution. By these means, Reese was able to withhold from the officers of the corporation all information as to the execution and the proposed sale, although the interest of the corporation required that the sale should produce a sufficient amount to satisfy the judgment, and the interest of Reese in the same manner was opposed to that of the corporation. It was found that Reese knew that a larger sum would be realized from the sale if the plaintiff or the other corporate officers were notified of the proceedings, and that he intentionally concealed information from them for the purpose of serving his own personal interest. The evidence justified this finding. Such conduct was a palpable fraud upon the corporation. It evidenced a breach of a legal duty, distinct from any that Reese owed to Darden, but it nevertheless affected adversely the interest of the latter to an even greater extent that it did that of the corporation. ▮ Acts of oppression and unfairness which will justify vacating an execution sale need not amount to legal fraud. "Unfairness," as it relates to conduct in connection with execution sales, embraces all types of dishonesty,

deception and oppression which operate to the prejudice of the judgment debtor or others interested in the sale. There can be no fixed standards by which the fairness of conduct or the extent of the claimed deception can be measured. Each case must be judged according to its particular facts. Unfairness sufficient to invalidate the sale is found here in the conduct of the secretary of the corporation who held the judgment sought to be collected as trustee for the corporation, who was under a duty to act in the highest good faith toward the corporation in all matters affecting its interests, and who, for his own benefit and advantage, withheld from plaintiff information that his stock had been subjected to the levy of an execution and also withheld such information from other officers of the corporation lest they convey it to the judgment debtor, or find other bidders for the stock. Simple honesty forbids such conduct. In *Eccleston* v. *Gale,* 122 Cal. App. 688 [10 P.2d 1032], the court condemned the action of the secretary of a corporation who withheld from a judgment debtor-stockholder information of a levy upon his stock, in order that the same might be sold to the mother of the secretary for a nominal consideration. In affirming a judgment vacating the sale, the court was emphatic in declaring the sufficiency of these facts to warrant the relief granted. In the present case the actions of Reese which were intended to and did prevent attendance at the sale of those who would probably have bid higher for the stock furnished sound legal ground for vacating the sale.

The judgment is affirmed.

Wood, J., and Vallée, J., concurred.