# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

NICKELUS GRANNUM-EMERSON,

        Defendant-Appellant.

UNPUBLISHED
November 29, 2016

No. 328225
Oakland Circuit Court
LC No. 2015-253174-FH

Before: M. J. KELLY, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

Defendant, Nickelus Grannum-Emerson, was convicted by a jury of possession of a fraudulent or altered financial transaction device, MCL 750.157n(2). Defendant was sentenced to 30 days in jail with credit for two days served and two years' probation. Defendant appeals as of right and for the reasons set forth in this opinion, we affirm the conviction and sentence of defendant.

## I. BACKGROUND

This appeal arises out of defendant's attempt to pick up a computer from Best Buy using a driver's license and debit card bearing a name other than his own. Testimony presented at trial revealed that on December 27, 2014 defendant arrived at a Best Buy indicating that he was there to pick up a call-in order for a computer. To effectuate the pick-up of the computer, defendant was asked to produce identification and a debit card. According to store employees, defendant gave them a Pennsylvania driver's license and a sapphire Chase Visa debit card, both of which were in the name of John Sposato. Store employees testified that they believed the photograph on the driver's license matched defendant and that the names on the two cards matched, however when they put the license and debit card under an ultraviolet (UV) light to check for holograms, none appeared. Store employees then contacted their manager who contacted the debit card company to verify the number on the debit card. Being unable to verify the debit card defendant presented, the manager then telephoned the police.

Officers Metter Rice and Kevin Stars arrived at the Best Buy and following a brief discussion with the manager, asked defendant for identification. This time defendant gave Officer Rice a valid Michigan driver's license which had defendant's name on it. Defendant told police he was at Best Buy to pick up a computer. Rice asked defendant if he presented the Pennsylvania driver's license and Chase debit card inside the store, and defendant indicated that

-1-

he had presented those cards. Officer Rice testified that both the Pennsylvania driver's license and the Chase debit card bore the name "John Sposato." Officer Rice compared the Pennsylvania and Michigan driver's licenses and determined that "the pictures were the same," although the name on each license was different. Officer Rice clarified that the photographs on the two licenses "were of the same person, they were not the same photo" and that it was therefore possible that the photograph on the Pennsylvania license could be of someone other than defendant.

After arresting defendant, Officer Rice "ran both the drivers [sic] license and the sapphire Visa card through a debit card reader" and there were "no results" for the cards, meaning that the system did not read the cards as valid and reacted "as if there was no information on those cards." Officer Rice also checked the name "John Sposato" in a law enforcement system called "CLEMIS"[1] to see if it was the name of a victim, and she checked the White Pages to see if there was a John Sposato either locally or in Pennsylvania. The name did not appear in either system, and Officer Rice was unable to locate a person named John Sposato during her investigation.

Defendant was charged with one count of possession of a fraudulent or altered financial transaction device, MCL 750.157n(2) and convicted and sentenced as indicated above. This appeal then ensued.

## II. ANALYSIS

On appeal, defendant argues that numerous errors occurred during the trial as a direct result of his trial counsel's failure to posit objections, call witnesses or properly prepare for and investigate defendant's case. Defendant argues that based on this litany of error he was denied the effective assistance of counsel.

We begin our discussion of ineffective assistance of counsel by noting the main legal holdings relative to such claims. A claim of ineffective assistance of counsel may be preserved by moving the trial court for a new trial or an evidentiary hearing. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000). In this case, defendant moved the trial court for a new trial or an evidentiary hearing based on the same grounds that he raises on appeal, and the motion was denied. Defendant also moved this Court for a remand to the trial court for an evidentiary hearing, and the motion was denied. Therefore, although no testimonial record was created because defendant's motions were denied, defendant nonetheless took the proper steps to preserve this issue. *Id.* We do, however, limit our review to the record evidence presented. See *People v Ullah*, 216 Mich App 669, 684; 550 NW2d 568 (1996). Additionally as this Court has often noted: "A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). Factual findings, if any, are reviewed for clear error, and questions of constitutional law are reviewed de novo. See *id*.

---

[1] CLEMIS is an acronym for the Oakland County Law Enforcement Management Information System.

There are "two components" to establishing an ineffective-assistance-of-counsel claim requiring reversal: the defendant must show first, "that counsel's performance was deficient," and second, that "the deficient performance prejudiced the defense." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). In other words, for a defendant to demonstrate that defense counsel was constitutionally ineffective, the defendant must show (1) "that counsel's performance was below an objective standard of reasonableness under prevailing professional norms," and (2) "that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *People v Stanaway*, 446 Mich 643, 687-688; 521 NW2d 557 (1994). "Effective assistance of counsel is presumed" and "[t]he defendant bears a heavy burden of proving otherwise." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "The defendant must overcome a strong presumption that counsel's assistance constituted sound trial strategy." *Stanaway*, 446 Mich at 687. With regard to trial strategy, this Court does not substitute its judgment for trial counsel's judgment, or evaluate trial counsel's performance by using the benefit of hindsight. *Id*. A "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defendant first argues that he received ineffective assistance of counsel because defense counsel failed to interview or call witnesses on defendant's behalf, failed to prepare adequately for trial, and failed to introduce the receipt that defendant used at Best Buy to initiate the pickup.

" '[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' " *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004), quoting *Strickland*, 466 US at 690-691 (alteration in original). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *Rockey*, 237 Mich App at 76. Furthermore, "[i]n general, the failure to call a witness can constitute ineffective assistance of counsel only when it 'deprives the defendant of a substantial defense.' " *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009), quoting *People v Hoyt*, 185 Mich App 531, 537-538, 462 NW2d 793 (1990). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (quotation marks and citation omitted).

In this matter, defendant has not identified any potential witnesses by name and has not provided affidavits of any potential witnesses regarding their possible testimony. Defendant asserts in his own affidavit that unnamed "co-workers" and the unnamed owner of the car wash could have verified the existence of an individual claiming to be Sposato. The affidavit is insufficient for this Court to establish the factual predicate for defendant's claim that defense counsel should have conducted a further investigation because defendant has not demonstrated the existence of information that defense counsel should have discovered that would have been helpful to defendant's case. See *Hoag*, 460 Mich at 6; *People v Pratt*, 254 Mich App 425, 430; 656 NW2d 866 (2002) (finding the defendant's argument that he received ineffective assistance of counsel to be "without merit" where the defendant's claim was based solely on his own assertions about how uncalled witnesses would have testified, and defendant made "no showing that these witnesses exist or that their testimony would have benefited defendant had they been called"). Additionally, from the record we cannot find where defendant provided his counsel with the names of any witnesses to interview, and there was no evidence introduced at trial that a

person claiming to be John Sposato actually existed other than defendant's unsubstantiated assertions. See *Grant*, 470 Mich at 480-482, 487, 489, 498 (holding that defense counsel's failure to investigate constituted ineffective assistance of counsel where there was conflicting evidence at trial about the cause of one of the victim's injuries, counsel only interviewed two or three of the people on a list of 12 or more people that was provided by the defendant to counsel before trial, and counsel failed to locate the eyewitnesses that would have substantiated the defendant's primary defense that the victim's injury was caused by a bicycle accident rather than by the defendant). Also, defendant has not demonstrated the fact that defense counsel did not investigate and interview defendant's co-workers or people at the car wash to see if anyone knew a person by the name of John Sposato. Defendant therefore failed to establish the factual predicate for his claim. See *Hoag*, 460 Mich at 6. Moreover, even if we were to presume that trial counsel's handling of the matter fell below a standard of reasonableness such that it constituted ineffective assistance of counsel, because we have no affidavit setting forth testimony from a potential witness who was either not interviewed or was not called to testify, defendant has failed to present evidence that could lead this Court to conclude that there exists a reasonable probability that the result of the proceeding would have been different. *Stanaway*, 446 Mich at 687-688. Accordingly, defendant is not entitled to relief on this issue.

Next, defendant argues that defense counsel did not adequately prepare because he met with defendant for "less than an hour and a half" and their communication by other forms was minimal. However, defendant does not explain how the amount of communication between defendant and defense counsel negatively impacted defense counsel's preparation. The record shows that defense counsel displayed thorough familiarity with the facts and evidence of the case, cross-examined witnesses, and presented the defense that defendant did not know that the debit card and the transaction at Best Buy were fraudulent. Defendant has failed to show that defense counsel's performance was objectively unreasonable, or that there is a reasonable probability that the result of the proceeding would have been different if defense counsel had spent more time meeting with defendant. *Stanaway*, 446 Mich at 687-688; *Payne*, 285 Mich App at 189 (finding that defense counsel's performance did not fall below an objective standard of reasonableness where the defendant's ineffective-assistance-of-counsel claim was based on "defense counsel's failure to meet with him during the time between the preliminary examination and the first day of trial because 'the record reveal[ed] that defense counsel was prepared for trial, displayed an adequate knowledge of the evidence, and was fully prepared to cross-examine the prosecution's witnesses)' ". Accordingly, defendant is not entitled to relief on this issue.

Next, defendant asserts that defense counsel was ineffective because "[h]e did not attempt to locate the receipt that [defendant] had handed to the store employees" and the receipt would have corroborated defendant's testimony. Normally, "[d]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). However, relative to this issue, we cannot find a basis for trial counsel to have looked for or produced a receipt. While defendant claims the receipt would have corroborated his testimony, it is unclear why the introduction of a receipt was necessary for his defense because a receipt, presuming one existed, would merely have shown that an order was placed in the name of John Sposato. That fact was already in evidence through the store employees, police officers and defendant. Furthermore, and as alluded to in the prosecutor's brief, there was no sale "receipt" as defendant

was thwarted by store employees and eventually the police from removing the computer from the store. If appellate counsel is alluding to an e-mail receipt or an order confirmation, again, there was no dispute that someone using the name John Sposato placed an order for the computer that defendant attempted to pick-up. Hence, trial counsel could not be expected to produce a sale "receipt" because none existed. To the extent defendant is arguing that trial counsel should have produced a call-in order receipt, the record clearly reveals there was no dispute that defendant went to Best Buy to procure a computer that was ordered for pick-up under the name of John Sposato. We therefore cannot find any factual basis on which we could make a finding that trial counsel's failure to produce, procure introduce or argue about a "receipt" amounted to a legally cognizable claim of ineffective assistance. Accordingly, defendant is not entitled to relief on this issue.

Next, defendant argues that defense counsel was ineffective for failing to make it evident that the wrong Michigan driver's license was introduced into evidence. This claim is premised on defendant's assertion that his 2012 rather than his 2014 driver's license was produced. However, our review of the record notes that the exhibit from trial reads: "Date Issued: 07/24/2014[.]" Consequently, the only evidence this Court has that would lead us to conclude that defendant's 2012 driver license was produced is defendant's assertion. Even if this Court were to presume that defendant's 2012 driver's license was produced at trial, defendant has not demonstrated how he was prejudiced. The Pennsylvania driver's license, not the Michigan license, was the identification that was alleged to be fraudulent. Therefore, defendant cannot present to this Court a reasonable probability that the result of the trial would have been different, even if the photograph from his 2012 rather than 2014 Michigan driver's license was admitted. See *Stanaway*, 446 Mich at 687-688. Accordingly, defendant is not entitled to relief on this issue.

Next, defendant argues that defense counsel was constitutionally ineffective by failing to object to the admission of five instances of hearsay evidence. Defendant argues that trial counsel's failure to object violated the Michigan Rules of Evidence and the Confrontation Clause of the Sixth Amendment. Specifically, defendant argues that defense counsel should have objected to the store employee's statement that he did not see the holograms on the cards after passing them under the UV light and the store manager's statement that he called the telephone number on the back of the debit card three times and could not verify the existence of the account. Defendant additionally argues that Officer Rice's statement that there were "no results" for the debit card and Pennsylvania driver's license when she ran them through her card reader violated Michigan Court Rules and his Sixth Amendment rights together with the testimony entered by representatives of Chase Bank regarding the Certificate of Authenticity of Business Records, and the Supplemental Deposition of the Chase representative stating that the debit card was a false instrument and the account number was not issued by her company.

Relative to the issue of the Chase Bank documents, we begin our discussion of the issue by deciding whether the complained of document was admissible. The Certificate of Authenticity of Business Records and attached documents were admissible under MRE 803(6) as records of a regularly conducted business activity, and were properly self-authenticated under the procedure outlined in MRE 902(11). The documents show a report for a specific credit card number among Chase BankCard Services, Inc.'s records of its credit card account numbers. Under MRE 803(6), such records are admissible if the custodian of the records or other qualified

witness testifies that these records were kept in the course of a regularly conducted business activity, and under MRE 902(11), this requirement can be met by a written declaration under oath by the custodian of the records certifying the same. Here, the Certificate of Authenticity is a notarized document in which Melanie C. Mitchell states that she is the custodian of the records, describes the attached documents as "Bank Identification Number (BIN) search and Account General Workscreen (WAGN) screen prints," and certifies that the records "1) were made at or near the time of occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters; 2) were kept in the course of the regularly conducted activity; and 3) were made by the regularly conducted activity as a regular practice," thus satisfying all of the requirements for self-authentication under MRE 902(11) and in turn providing for the admissibility of the records under MRE 803(6). Clearly, a credit card company must keep accurate records of the credit card numbers it has issued. The two attached documents show that the credit card number that was on the Chase debit card used by defendant at Best Buy does not exist in Chase BankCard Services, Inc.'s records and is an invalid number. Furthermore, the prosecution gave notice before trial of its intent to introduce these records, complying with the notice requirement of MRE 902(11), and defense counsel was "aware" of the records. Additionally, the Supporting Deposition of Melanie C. Mitchell qualifies under MRE 803(7) is an exception to the hearsay rule because it is evidence that the debit card used by defendant is not included in Chase BankCard Services, Inc.'s records of account numbers issued, and those records met the requirements of MRE 803(6) as previously discussed. The document is a notarized document in which Mitchell states that the debit card used by defendant was not issued by Chase Bank and is a false instrument. Because the Certificate of Authenticity of Business Records and the attached documents are admissible under MRE 803(6) and MRE 902(11), it was not objectively unreasonable for defense counsel to refrain from making a futile objection on hearsay grounds to the admission of this evidence. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004). Furthermore, because the Supporting Deposition was also admissible under MRE 803(7), it was also not objectively unreasonable for defense counsel not to object to the admission of this evidence on hearsay grounds. *Thomas*, 260 Mich App at 457.

These legal conclusions ring true to the entirety of defendant's claims of error relative to the introduction of hearsay evidence as none of the complained of testimony constitutes inadmissible hearsay under the Rules of Evidence. The testimony of the store employees and police officers was introduced to demonstrate why each witness acted in the way that they did. "[A] statement offered to show the effect of the out-of-court statement on the hearer does not violate the Confrontation Clause" and 'a statement offered to show why police officers acted as they did is not hearsay." *People v Chambers*, 277 Mich 1, 11; 742 NW2d 610, 616 (2007). Hence, counsel cannot be held to be ineffective for failing to make a futile objection. *Thomas*, 260 Mich App at 457. Further, we note that defendant based his defense of his assertion that he was either doing a favor or getting paid to pick-up a computer from Best Buy for John Sposato. On appeal, defendant is essentially arguing that rather than deny knowledge of the fraudulent nature of the debit card, defendant should have contested the State's case relative to the fraudulent nature of the debit card. Clearly, defendant is requesting this Court engage in second-guessing trial counsel's strategy. It is well settled that: "This Court will not second-guess counsel on matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015) (quotation marks and citation omitted). In addition, even if this Court held that the instances of alleged error cited by appellate counsel constitute ineffective assistance of counsel, none of the alleged errors entitle

defendant to relief as none of the admitted "hearsay" evidence would lead this Court to conclude that defendant has established that he had suffered prejudice or that the result of the proceedings would have been different. *Strickland*, 466 US at 687; *Stanaway*, 446 Mich 687-688. Accordingly, defendant is not entitled to relief on this issue.

Next, defendant argues that defense counsel was ineffective for failing to object to the prosecutor's repeated references to defendant's post-*Miranda* silence. "[A] defendant's post-arrest, post-*Miranda* silence cannot be used to impeach a defendant's exculpatory testimony. . . ." *People v Shafier*, 483 Mich 205, 213; 768 NW2d 305 (2009), cert den sub nom *Michigan v Shafier*, 558 US 992; 130 S Ct 509; 175 L Ed 2d 349 (2009), citing *Doyle v Ohio*, 426 US 610, 96 S Ct 2240, 49 L Ed 2d 91 (1976). However, "a defendant's silence may be used to impeach his exculpatory testimony—if the silence occurred either (1) before arrest or (2) after arrest and before *Miranda* warnings were given." *People v Borgne*, 483 Mich 178, 187; 768 NW2d 290 (2009), reh granted in part 485 Mich 868 (2009). There also is an "impeachment exception" to this general rule, which provides that " '[p]ost-arrest[, post-*Miranda*] silence [can] be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest' " because the defendant's silence " 'would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest.' " *Borgne*, 483 Mich at 192, quoting *Doyle*, 426 US at 619 n 11 (third alteration in original). Furthermore, a defendant's claim that he did not have an opportunity to give his version of events until trial also "falls within the exception permitting impeachment of a defendant's version of his postarrest behavior." *People v Allen*, 201 Mich App 98, 103; 505 NW2d 869 (1993). In other words, "[h]aving raised the issue of his opportunity to explain his version of the events, [the defendant] 'open[s] the door to a full and not just a selective development of that subject.' " *Id*. (citations omitted).

In this case, part of defense counsel's trial strategy appears to have been to describe defendant's previous negative experiences with receiving help from the police in an effort to explain why defendant did not immediately give information to the police about John Sposato. Considering that the defense at trial was that defendant was either doing a favor for or getting compensated by Sposato for picking up a computer he ordered, the jury would likely inquire as to why defendant had not immediately given information about the existence of John Sposato to the police. Consistent with this trial strategy, defense counsel asked defendant why he did not tell the police about Sposato. Defendant's counsel next inquired of defendant why defendant failed to file a police report and defendant replied that he did not know how to do that or that he was not aware that he should have filed a police report. On cross examination defendant denied that he refused to speak to the police, claiming that he spoke with officers until he was placed in jail.

We note that the impeachment rule generally applies when a defendant testifies to an exculpatory version of the events and contends at trial to have informed police of an identical version upon arrest. *Borgne*, 483 Mich at 192. As argued by the prosecution on appeal, the impeachment rule also applies to rebut a defendant's claim that he was precluded from telling police his version of events. *Allen*, 201 Mich App at 103-104. As this Court stated in *Allen*: "Having raised the issue of his opportunity to explain his version of the events, he 'opened the door to a full and not just a selective development of that subject.' " *Allen*, 201 Mich App at 103 (citations omitted). As previously indicated, it appears that defense counsel devised a trial strategy to address why defendant failed to tell the police about the existence of John Sposato. In

order for defendant to fully explain to the jury why he failed to inform police about the existence of Sposato, it was necessary for trial counsel to "open the door" to defendant's post-*Miranda* silence. Hence, once defendant opened the door, the prosecutor had the right to explore the full development of defendant's assertions. *Id.* Accordingly, we cannot assign error to the prosecutor's questioning.

Additionally, defendant also argues that it was ineffective assistance of his trial counsel not to object to the assistant prosecutor's line of questioning. Such an argument merely questions, in hindsight, the trial strategy employed by defense counsel. As previously stated in this opinion: "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *Davis*, 250 Mich App at 368. Furthermore, the record reveals that on direct examination, defendant was not able to explain his points relative to why he did not initially tell the police about John Sposato in much detail because the trial court sustained the prosecutor's objection to the testimony. Thus, by refraining from objecting and permitting the prosecutor on cross-examination to question defendant about his silence, including post-*Miranda* silence, defense counsel allowed defendant an opportunity to explain why he did not give the police information about Sposato at any time and gained the opportunity to explore the issue more completely on redirect examination. Furthermore, if defense counsel had objected to the prosecutor's references during closing argument to defendant's silence, the effect might have been to detract from defense counsel's focus on explaining why defendant did not provide information about Sposato to the police before *Miranda* warnings were given. When considering an ineffective-assistance-of-counsel claim, an appellate court must "affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did." *People v Gioglio (On Remand)*, 296 Mich App 12, 22; 815 NW2d 589 (2012), vacated in part on other grounds 493 Mich 864 (2012) (citation and quotation marks omitted). "[D]eclining to raise objections, especially during closing arguments, can often be consistent with sound trial strategy." *Unger*, 278 Mich App at 242-243. Defense counsel's strategic decisions will not be "second-guessed" or assessed "with the benefit of hindsight." See *Putman*, 309 Mich App at 248. Therefore, defendant has not shown that defense counsel's performance was objectively unreasonable in this regard. See *Strickland*, 466 US at 687; *Stanaway*, 446 Mich at 687. Moreover, defendant has failed to show a reasonable probability that the result of the trial would have been different had defense counsel objected to the prosecutor's references to defendant's silence. See *Stanaway*, 446 Mich at 687. Therefore, defendant is not entitled to relief on this issue.

Next, to the extent that defendant appears to add a prosecutorial misconduct argument at the end of his brief, we decline to address this issue because it was not raised in defendant's statement of questions presented and therefore was not properly presented for review. MCR 7.212(C)(5); *Unger*, 278 Mich App at 262.

Finally, defendant again requests an evidentiary hearing in the alternative if a new trial is not granted. Both this Court and the trial court denied such a hearing. Having reviewed the entire record, this Court cannot find "any issue for which further factual development would advance his claim," and an evidentiary hearing is therefore wholly unnecessary. See *Chapo*, 283 Mich App at 369. Accordingly, defendant is not entitled to an evidentiary hearing.

Affirmed.

/s/ Michael J. Kelly
/s/ Christopher M. Murray
/s/ Stephen L. Borrello